No. 17,956.

PEOPLE OF THE STATE OF COLORADO, EX REL. DUKE W.
DUNBAR, ATTORNEY GENERAL *v.* SAM WEINSTEIN.

(312 P. [2d] 1018)

Decided July 1, 1957.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, for relator.

Mr. PERCY S. MORRIS, for respondent.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

RESPONDENT, to whom we will refer as Weinstein, was
informed against by "Complaint in Original Proceedings
for Disbarment" filed in this court by the Attorney General of the State of Colorado.

The pertinent facts alleged in the complaint are: That respondent at all times mentioned therein was an attorney at law, duly licensed as such by the Supreme Court of Colorado; that in 1953 an action was filed against Weinstein and others to recover treble damages on a claim for excess interest in the sum of $950.61, allegedly collected by defendants in connection with a loan made by them to the plaintiffs in that action; that defendants filed an answer therein alleging facts, which if established would defeat the claim of plaintiff; that upon trial of said action Weinstein became a witness and testified at length; that during his testimony he gave evidence that the loan in question actually was made by one Bert Harris for whom Weinstein acted as attorney; that he (Weinstein) had issued the check on behalf of Harris to the order of the borrowers and that Harris had advanced the money in the form of a check which was deposited by Weinstein in his own account. Weinstein further testified that on the same day the loan was made Harris sold the note to Weinstein's father for $1,900.00 which was delivered in cash by the latter in the presence of Weinstein, and that Harris received the cash and endorsed the note; that in truth there was no such person as Bert Harris and that the loan was made by respondent as agent for his father; that his father was never at any time a holder in due course for value of the note in question, but actually was the person who demanded and received the excess charges of interest, all of which respondent well knew because he handled the entire transaction and received fees in connection therewith.

· Weinstein has filed an answer here, which reads in pertinent part as follows:

"Comes now the respondent and, confessing the truth of the charges against him which are contained in the Complaint herein, throws himself upon the mercy of the Court and asks the indulgence of the Court in respect to the discipline to be administered by it to him.

"And respondent submits to the Court that, during the eighteen years that he has been practicing law pursuant to his admission to the bar by this Court, he had borne an unblemished reputation as an attorney and that he has devoted large amounts of his time to working on communal and charitable activities and he asks that he be given an opportunity to submit evidence in support of the statements contained in this paragraph."

A Referee was appointed to conduct a hearing and report his findings to the court. A hearing was held by the Referee at which Weinstein called ten witnesses, all of whom testified that respondent had theretofore borne a good reputation. It was established that he had been active in various fraternal, religious and benevolent organizations. He freely admitted that he had committed the perjury charged against him in the complaint. His only justification for the false testimony given in the action mentioned was:

"I can't give any explanation other than that fact; of course, of this family situation, of attempting to protect my father in this particular matter. * * *

"I felt * * * that if he were a holder in due course of these notes, that he in turn would not be liable for treble damages."

Weinstein has been a practicing lawyer for eighteen years. The attorney for the parties who filed the action against him and his co-defendants in which the perjured testimony was given, states for himself and his clients with reference to these proceedings in disbarment:

"I think it not inappropriate to express the feelings that the Barnabes and I share with reference to disciplinary measures which may be taken against him.

"We believe that in good conscience and all humility we should join in your appeal to the Justices of the Supreme Court for the extension to Sam Weinstein of the utmost degree of leniency which they, in the exercise of their discretion, feel can be justified under all the circumstances of the case.

"Mr. and Mrs. Barnabe, as parents, are all too aware that the sufferings of the father are necessarily visited upon the children, that disbarment of an attorney is extremely severe, and that whatever discipline may be accorded to Mr. Weinstein will be suffered not only by him, but also by his wife and five children."

■ Counsel for Weinstein has filed briefs in which he pleads eloquently for disciplinary action short of disbarment. We have given careful consideration to the record and the argument of counsel. We fully realize that every disbarment proceeding should be considered and treated as the facts and circumstances move the conscience of this court, *Gould v. State,* 99 Fla. 662, 127 So. 309, 69 A.L.R. 699; yet, where there is a comparable case, it should be resorted to for guidance in order that uniformity in the administration of justice be achieved as nearly as possible. We have precedent for suspension, the ruling in which should be a touchstone for this case. We refer to the case in 123 Colo. 390, 229 P. (2d) 665, involving a conviction in the United States District Court for Colorado of two separate offenses of "making, or causing to be made, to a governmental lending agency false statements, and also of conspiring to do the same."

■ The recommendation of disbarment seems too harsh in view of all the circumstances. As has been done in other disbarment proceedings, we should cast on the scales nearly nineteen years of honorable service in the profession, together with the weight of commendable participation in civic and charitable works, as against his serious violation of the law. 88 Colo. 394, 297 Pac. 998.

Viewing the beam of the scales under these circumstances, we adjudge that respondent should be, and he hereby is, suspended from the practice of law in this state for a period of two years, at the conclusion of which, in the absence of any showing of further dishonorable conduct on his part, his reinstatement will automatically ensue.

Mr. Justice Holland and Mr. Justice Hall dissenting.

Mr. Justice Holland dissenting.

With an abiding feeling that the penalty of two-year suspension is too severe, and that a milder penalty would amply satisfy the ends of justice and the purposes sought to be accomplished, I respectfully dissent from the result announced in the majority opinion.

It is not necessary to again relate the circumstances which are fully set out in the majority opinion, and respondent confessed the truth of the charges and has placed himself at the mercy of the court with respect to the discipline to be administered. This fact is worthy of much consideration. " * * * there is joy in the presence of the angels of God over one sinner that repenteth." Luke 15:10. We are not confronted with a history of petty transgressions, but on the other hand, we must make note that we are considering what to do in the case with one deviation from the straight and narrow path during nineteen years of honorable practice without blemish on respondent's reputation, and the violation here complained of must be considered in the light of respondent's history of devotion to communal and charitable activities, which reveals a commendable spirit. Also, we must not overlook the filial devotion and respect to his parents and elders, seemingly a part of the traditions of his race. It is not idle nor out of place to observe the laudable fact that statistics will show that there is a smaller percentage of Jewish people brought before the bars of justice for violations of our civil and moral laws than any other race.

It is apparent that the motive for the perjured testimony was for protection of his father against a possible claim for treble damages. If this is true, it follows that he did not falsify for the purpose of financial gain for himself. No more trustworthy witnesses could have

testified as to his unblemished character and reputation than the ten lawyers and businessmen who testified and who were unstinting in their laudable expressions as to respondent's life and character. This testimony should be given great weight and be most impressive as it reveals a long history of honorable conduct with only the present exception.

In the dissenting opinion of one of my associates, among other things it is said that respondent was unmindful "of the Canon of Ethics governing the conduct of lawyers." I have yet to know the lawyer who, being a zealous advocate, did not violate the following part of the Canon of Ethics: "It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause." Regardless of all this, respondent admittedly violated his oath as a witness and also the decalogue formulated by his ancestral fathers, far removed, in bearing false witness. Fortunately for respondent, as well as many of us, there are only ten commandments instead of forty; however, respondent by his transgression, was not seeking personal benefit or gain, as appears to be the case in the great majority of our disciplinary cases, and if we followed a precedent which we have, his name would be deleted from our printed reports. This was done in a much graver offense and a reprimand administered. When we consider respondent's reasons for giving the false testimony, we would serve all purposes by a much less severe penalty than that announced in the majority opinion. To understand is to pardon. While not the rule, man's inhumanity to man obtains among judges as well as other people.

Our Legislature has wisely provided probation for felonies, except first and second degree murder, and the further exception in cases where a person has been twice convicted of a felony in this state or elsewhere prior to the case at hand in which application is made. A suspension from practice for a period of two years is a

harsh punishment to innocent victims and is not at all comparable to reprimands that have been administered by this Court in more flagrant violations. If it be considered that the penalty serves as a deterrent, it will not reach the very few members of the bar who may be culprits at heart and go on the false premise that they are smart enough to not be caught. The great mass of members of the bar carry their code of ethics as well as their honor and loyalty to their oaths, in their heart, and conform to the principles of honor and integrity without any so-called lesson of discipline by this Court. There is no reason to crucify one transgressor as a lesson for the overwhelming majority of the members of the bar who do not need the lesson. If such a lesson is needed as a deterrent, then there had better be a general over-hauling of the moral standards of the profession. An inspection of the records across the country in disciplinary proceedings reveals that the punishment ranges in many instances from a reprimand to a ninety-day suspension, and such practice by courts of high standing has obtained for decades without the processes of justice and the courts falling apart.

We do not have a history here of moral turpitude, just the opposite; however, respondent's transgression is not to be treated too lightly. If this one deviation in nineteen years is sufficient to rock the citadels of justice, then they are in a shaky condition. The life, character, and history of this respondent should palliate the flagrancy of his delinquency and should weigh heavily in his favor as against the severe penalty of a two-year suspension. Such a penalty is a crushing blow to any attorney and few ever surmount its disastrous effects. No doubt, the fact of this pending proceeding has been grievous and the cause of great anxiety on respondent's family, and if respondent possesses an ounce of worth, then he has already learned a lesson the hard way. Respondent being a lawyer and presumably with full knowledge of the seriousness of the offense charged and admitted, we can-

not condone the violation, however, it is my belief and opinion that suspension from practice as an attorney at the bar of Colorado for a period of ninety days is amply sufficient.

Mr. JUSTICE HALL dissenting.

I respectfully dissent from that portion of the majority opinion which provides for a two-years' suspension of respondent's privilege to practice law and his automatic reinstatement on expiration of said period. I am of the opinion that respondent should be permanently disbarred from the practice of law, that his name should be stricken from the roll of licensed attorneys, and that the respondent's actions be referred to the district attorney of the City and County of Denver for such criminal prosecution as the facts and law may warrant.

Respondent by his answer and by his testimony before the referee, admits and confesses that in a case in which he was a defendant as well as of counsel, he knowingly testified falsely under oath to a material matter in a cause then on trial in the district court, all for the purpose of causing a miscarriage of justice. Having failed in the trial court, respondent brought the case to this Court on writ of error and in the proceedings on error, presented to this Court the record containing his perjured testimony and sought a reversal of the judgment of the trial court and urged or caused to be urged as a ground for reversal his perjured testimony.

Respondent's license to practice law imposed upon him duties and obligations as well as to grant him privileges. He was an officer of the court where he was privileged to appear; he owed a duty to the judge, the witnesses, his opponents, to the public, and lastly but not least to himself — to be honest, truthful and helpful in presenting matters to the court, whether in his own behalf or in behalf of others, that justice might prevail. Unmindful of these obligations, unmindful of his oath of

office, of the canons of ethics governing the conduct of lawyers, unmindful of the criminal laws which he knowingly offended, he proceeded with deliberation and cunning, scheming with a callousness that defies description to give false testimony in order to defeat the ends of justice.

In my opinion our judicial system, dependent upon the integrity of those selected to administer it, cannot survive if the practice of perjury and the practice of law are to go hand in hand, subject only to temporary restraint.

Respondent is a confessed perjurer and as such a confessed felon. C.R.S. '53, 39-10-17, provides:

"Felony disqualifies from office.—Subject to the constitution of the state, every person convicted of felony shall from thenceforth be disqualified from holding any office of honor, trust, or profit under the laws of this state, or practicing as an attorney in any of the courts of this state."

True, respondent has not been convicted of perjury, but reason dictates that not only "convicted felons," but "confessed felons" as well, should be disbarred from the practice of law.

I feel we should not use as a precedent herein the extreme leniency shown respondents in the two cases cited in the majority opinion. I prefer instead the reasoning and conclusion reached in 80 Colo. 220, 249 Pac. 1093, where the respondent was *disbarred for subornation of perjury*. That decision, in my humble opinion, is a proper precedent, if precedent were needed. The following language of the unanimous decision is applicable in the case now before us.

"We are called upon to say what will disqualify one to practice law. That question must be answered not from the standpoint of the individual, but from the standpoint of the commonwealth whose courts it is our solemn duty, so far as we are able, to maintain as the citadels of justice, and perjury is the chief menace of justice. * * *

A false oath was bought with which to paralyze a prosecution and material witnesses bribed to depart the jurisdiction. If one may do this and continue in the profession, for what offense will he be excluded?

" * * * But a lawyer's first duty is not to his client, it is to justice, and who so profanes the altar he serves must leave that service for the public safety."

The report and recommendations of the referee for disbarment should be approved, respondent should be disbarred and his name stricken from the roll of licensed attorneys.