No. 21421.

The People of the State of Colorado v.
John J. Gibbons.
(403 P.2d 434)

Decided June 7, 1965.    Rehearing denied June 28, 1965.

358

Duke W. Dunbar, Attorney General, John W. Patterson, Assistant, for People of the State of Colorado.

William H. Erickson, for respondent.

*En Banc.*

Mr. Justice Schauer delivered the opinion of the Court.

This is an original proceeding in discipline entitled "Petition for Citation" which was filed in this court by the Attorney General of the State of Colorado.

The chronology of events involving the respondent is briefly set forth as follows:

On June 23, 1964, the respondent was found guilty by a jury in the Federal District Court on each of six counts of an indictment charging what is generally referred to as income tax evasion and perjury.

On July 13, 1964, the Federal Court entered a "Judgment and Commitment" wherein the respondent was

committed to the custody of the Attorney General for imprisonment for a period of two years upon each of the six counts. It was also adjudged that respondent pay a fine to the United States of America upon each of the six counts. Confinement in a "jail-type" institution for a period of forty days was ordered. Imposition of the remainder of the sentence was suspended and the respondent was placed on probation for a period of three years. The respondent chose not to effect an appeal of his conviction and sentence.

Subsequently, the Attorney General of the State of Colorado filed in this court the "Original Proceeding in Discipline." The respondent filed his answer to the Petition for Citation, in which he denied guilt in fact of any of the offenses charged in the indictment; he denied improper use of his name in "Who's Who in Colorado," and also denied that his conduct was contrary to the highest standards of honesty, justice and morality.

On August 12, 1964, the Attorney General of the State of Colorado, upon order of this court, filed his formal complaint against the respondent before the Grievance Committee of the Supreme Court of the State of Colorado. Citation was issued by this court directing the respondent to answer the formal complaint. An answer and amendment of answer were filed by respondent, in which he generally denied guilt in fact of the crimes charged in the indictment; he generally denied action involving moral turpitude, and affirmatively alleged that he had at all times abided by the highest standards of honesty, justice and morality and by the canons of legal ethics imposed upon all members of the bar.

On February 19, 20 and 27, 1965, the Grievance Committee held hearings and subsequently filed its report, to which the respondent filed his exceptions.

The respondent's defense to the disciplinary action complaint in general terms was that the crime charged did not involve moral turpitude, and neither did it in anywise affect his right to practice law in the State of

Colorado; that he had not been convicted of a felony that would justify revocation or suspension of his license, and that his conduct had not been contrary to the highest standards of honesty, justice and morality. He affirmatively alleged that at no time did he commit the offenses charged; that he at all times had had his tax returns prepared by a registered accountant, relying upon his expertise for proper determination of the method and amount of tax; that he is not an expert in the field of taxation; that he established good faith in the filing of his tax returns and the use of an expert for that purpose; that he had at all times conducted himself as a lawyer to reflect the highest standards of honesty, justice and morality, and that he was not and is not in fact guilty of any of the charges made in the formal complaint.

In the case of *People v. Bell,* 150 Colo. 245, 372 P.2d 436, this court stated:

"* * * that disciplinary action to be taken in a given case must in the final analysis depend upon the facts and circumstances of that particular case, and where a prior comparable case exists it should be resorted to for guidance in order that some degree of uniformity may be approximated. See *People ex rel. Dunbar v. Weinstein,* 135 Colo. 541, 312 P.2d 1018 and *People ex rel. [Attorney General] v. Heald,* 123 Colo. 390, 229 P.2d 665." This language is indeed appropriate, not only because of its applicability to this case, but also because it sets forth an important guide concerning such types of misconduct on the part of members of the bar which may be deemed to be grounds for disciplinary action.

In the case of *People ex rel. Dunbar v. Fischer,* 132 Colo. 131, 287 P.2d 973, this court entered an order of disbarment after the respondent had been found guilty in the Federal Court of a crime similar to the one charged in this case. In that case the court held that the respondent's conduct as indicated in the record in-

volved moral turpitude and an attempt to defraud the United States Government. An examination of the record in the matter now before this court also leads to the inescapable conclusion that an attempt to defraud the United States Government was actually made and that moral turpitude is involved.

The respondent's declarations of innocence and his reliance upon the accountant to make his tax decisions for him are not supported in the voluminous records from the trial court and the committee. In fact, the amount of money involved in the discrepancies between his income and that reported to the government is of major significance. Thus, it becomes incredible that one, of respondent's intelligence and experience, should attempt to assert innocence and mere error. Suffice it to say, that we are not sufficiently impressed by his defense to excuse his conduct.

In *People ex rel. Dunbar v. Fischer, supra,* the court stated (quoting from the report of the Referee):

"* * * His education and training, his experience as a judge and as a practicing lawyer clearly negative any contention that he was derelict through lack of knowledge or inexperience or through inexcusable mistakes or misjudgment. His conduct was obviously deliberate."

The enormous responsibility of the court, in matters of discipline, which issue is raised in this proceeding, gives cause to again examine and reiterate that part of the Preamble of the Canons of Professional Ethics, which appears in Appendix B, R.C.P. Colo., C.R.S. 1963:

"In America, where the stability of Courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing Justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of the Republic, to a great extent, depends upon our mainte-

nance of Justice pure and unsullied. It cannot be so maintained unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men."

The scope of the language may be idealistic or over-idealistic to some; such, however, must be the motivating force if the profession is to give support to the image of the bar whose members are sworn to uphold the basic ideals of our form of government.

■ The last sentence of Section 29 of the Canons speaks more directly to the issue in this proceeding:

"* * * He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice." This principle is affected, if not destroyed, if and when members of the legal profession are found guilty of a crime which involves moral turpitude.

■ The respondent was found guilty of a charge involving dishonest conduct. This finding, under the circumstances here disclosed, brings his conduct within the definition of moral turpitude. It then remains for the court to consider all of the circumstances revealed in the record in order to exercise its proper judicial discretion for the protection of the public; yet, this is not to say that the respondent's many years of honorable service must not also be placed upon the scales of justice.

Upon consideration of the record before us, it is the judgment of this court that respondent be, and hereby is, indefinitely suspended from the practice of law in this State.

Mr. Justice Day and Mr. Justice Frantz dissent.

Mr. Justice Frantz dissenting:

We are concerned here with an attorney who has practised law in this state for many years and has an established law business. He is not a young man.

In the Court's consideration of this matter I voted for public censure and would have my vote appear of record. In so voting, several factors were persuasive: the respondent has already suffered greatly from the matters which were the subject of this proceeding; his past record; his age; and the conviction that respondent will never hereafter act in any manner to bring disrepute to the law profession or himself.

MR. JUSTICE DAY authorizes me to say that he joins in this dissent.