STATE OF NORTH CAROLINA Upon the Relation of DENNIS G. BRUM-
MITT, Attorney-General, v. HERMAN WOODWARD
WINBURN, Attorney at Law.

**1. Attorney and Client E b—Courts have inherent power to disbar attorneys.**

Our courts have the inherent power to hear and determine whether one who has received a license to practice law in the courts of this State should be disbarred from practice in our courts for moral or professional delinquency, or misconduct, malpractice, or deficiency of character.

**2. Attorney and Client E a—Evidence held sufficient for order of disbarment on motion of Attorney-General.**

Where a committee of impartial and competent men appointed by the Supreme Court has made an investigation of charges against an attorney licensed to practice law in our courts and, after investigation, has unanimously recommended that the attorney be disbarred for moral unfitness, and it appears that the attorney had been disbarred by another State prior to being licensed by this State, and that subsequent to the issuance of license by this State he made false statements in his applications for admission to practice in the Federal Courts relative to his disbarment by such other state, and that, after investigation and hearings, the Federal Courts disbarred him from practice in the Federal Courts, the evidence is sufficient to show a present unfitness of the attorney to practice law in the courts of this State, and the motion of the Attorney-General for an order of disbarment will be granted, and while the action of the Federal Courts is not controlling, it is evidence of such attorney's present unfitness to practice law.

MOTION and petition to disbar.

Herman Woodward Winburn was duly admitted to practice law in the State of Louisiana in 1922. Charges were preferred against him in that state on 26 August, 1925. On 23 November, 1925, the respondent admitted the truth of the charges and thereupon the Disbarment Committee of the Supreme Court of Louisiana adopted a resolution declaring that it had information that the respondent would "within 30 days from this date, . . . apply to the Supreme Court of Louisiana for permission to have his license to practice law canceled, because of his being guilty of moral terpitude and improper conduct in the practice of law; that it is the sense of this committee that if this is done and his license is canceled by the Supreme Court, within the time stated, that no further proceedings be had by this committee."

On 12 December, 1925, respondent filed a petition in the Supreme Court of Louisiana stating that "he wished to discontinue the practice of law, that the license granted him was no longer necessary and that he desired it be revoked . . . and his name stricken from the roll of attorneys."

In October, 1926, the respondent became a citizen of Greensboro, North Carolina, secured employment, and discharged the duties thereof with diligence and credit.

At the Fall Term of 1928 this Court, upon written examination, duly issued a license to practice law to respondent and thereafter he appeared in the State and Federal courts.

On 2 June, 1931, Winburn applied for admission to practice in the Supreme Court of the District of Columbia. In the application two questions, among others, were propounded, to wit: "(E) If admitted, have any charges ever been preferred against you as attorney and counsellor at law? (F) If so, with what results?"

The respondent answered the first question "Yes," and the second "Dismissed by committee after matter investigated."

Winburn filed an application for admission to practice in the Supreme Court of the United States on 14 October, 1931. Questions propounded in said application, among others, were as follows: "(7) State courts of last resort to which applicant has been admitted to practice." "(8) State places where applicant has been a practitioner."

The respondent answered the 7th question as follows: "Supreme Court of North Carolina, 20 August, 1928." In reply to the 8th query he stated: "Greensboro, North Carolina, and Washington, D. C."

The attention of the Supreme Court of the United States was directed to the career of Winburn in New Orleans, Louisiana, and thereupon said Court appointed a committee of three eminent and distinguished members of the bar to investigate the status of applicant and make recommendations. After respondent had been fully heard in his own defense the said committee, after reciting the pertinent facts, found "that the respondent is an unfit person to practice law at the bar of this Court." Thereafter on 9 October, 1933, the Supreme Court of the United States speaking through *Mr. Chief Justice Hughes,* said "Being of the opinion that the said Herman Woodward Winburn has been guilty of conduct unbecoming a member of the bar of this Court, and that he is an unfit person to practice at the bar of this Court;

Now, therefore, it is ordered that the said Herman Woodward Winburn be, and he is hereby, disbarred from the further practice of the law in this Court."

Subsequently, respondent has been disbarred by the District Court for the Middle District of North Carolina and the United States Circuit Court of Appeals for the Fourth Circuit.

In November, 1933, the Attorney-General of this State filed a motion and petition in the Supreme Court of North Carolina for the purpose of requiring Winburn to show cause why he should not be disbarred "from the practice of law in the State of North Carolina . . . and

his name stricken from the rolls of practicing attorneys in this Court and in the other courts of said State."

Thereupon this Court caused a citation to issue to respondent "to file an answer by 5 December, 1933, if so advised."

An answer was duly filed and the Court appointed Hon. Joseph B. Cheshire, Jr., Hon. L. T. Hartsell and Hon. R. W. Herring, eminent members of the bar of North Carolina and regularly practicing in this Court, to conduct a hearing or hearings, find the facts and report to this Court.

After hearing the respondent and his counsel, this committee filed a report in this Court on 18 May, 1934. This report states the facts substantially as hereinbefore mentioned, and upon such facts so found the committee unanimously recommended that the respondent "be disbarred from further practice before this Court."

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*James S. Manning and Robt. D. Douglass for respondent.*

BROGDEN, J. The foregoing facts and procedures produce for consideration two questions of law, to wit:

(1) Has this Court, at this time, the power to revoke a law license and disbar an attorney?

(2) Do the facts warrant and justify such revocation and disbarment?

The weight of judicial authority in this country establishes the inherent power of the courts to revoke licenses granted to attorneys and to disbar them from the practice. The Supreme Court of the United States in *Ex Parte Garland,* 71 U. S., 379, 18 L. Ed., 366, declared. "The attorney and counselor being, by the solemn judicial act of the Court, clothed with his office, does not hold it as a matter of grace and favor. The right which it confers upon him to appear for suitors, and to argue causes, is something more than a mere indulgence, revocable at the pleasure of the court, or at the command of the legislature. It is a right of which he can only be deprived by the judgment of the Court, for moral or professional delinquency." The Supreme Judicial Court of Massachusetts, in considering the question *In Re Opinion of Justices,* 180 N. E., 725, said: "The inherent jurisdiction of the judicial department of the government of attorneys at law is illustrated in several of our decisions to the effect that the power to remove an attorney for misconduct, malpractice, or deficiency in character, although recognized by statute, is nevertheless inherent and exists without a statute." See, also, *State v. Cannon,* 240 N. W., 877; *Byrdonjack v. State Bar of California,* 281 Pac., 1018, 66 A. L. R., 1507; *In re Information to*

*Discipline Certain Attorneys of the Sanitary District of Chicago,* 184 N. E., 332, 81 A. L. R., 1059. Moreover, the Supreme Court of North Carolina is committed to the same philosophy of law in *Committee of Grievances v. Strickland,* 200 N. C., 630, 158 S. E., 110.

Consequently, the first question of law propounded must be answered in the affirmative. Indeed, the correctness of the proposition is not controverted by the learned counsel for the respondent, who declare in their brief: "We heartily agree with the oft-repeated statement that, independent of any statute, the Court has the inherent power to disbar an attorney when such disbarment is in the opinion of the Court reasonably necessary for the preservation and defense of its dignity and purity and the continuation of its proper function."

The second question of law must be solved by reference to the pertinent facts. Much has been said and written in the various investigations of the status of respondent concerning his unfortunate professional lapse in his native State of Louisiana. This occurred approximately nine years ago and at a time when Winburn was a mere youth. It is not, and ought not to be, the policy of the law to require a person, who has incurred the condemnation of its mandates, to bear openly upon his bosom through the remaining years of his life the scarlet letter of the sins of his youth, if, in fact, he has been recast in the flaming foundry of experience; or to use the exalted language of the Baptist, "has brought forth therefore fruits meet for repentance." Of course, these facts should doubtless have a place in the frame-work of the ultimate solution of the problem.

Notwithstanding, there are two aspects of the question which challenge the right of the respondent to practice law in this State pursuant to the license granted in 1928 by the Supreme Court of North Carolina.

1. On 2 June, 1931, subsequent to the issuing of license by this Court, the respondent applied for admission to practice in the Supreme Court of the District of Columbia. In order to obtain such admission he represented to the Court that the charges preferred against him in Louisiana were "dismissed by committee after matter investigated." There was abundant evidence that such statement was not correct to the knowledge of said respondent. Subsequently he filed an application to practice in the Supreme Court of the United States and in response to a question in said application as to where he had practiced law, stated: "Greensboro, North Carolina, and Washington, D. C." This statement likewise was not a correct statement to the knowledge of said respondent, thus demonstrating that Winburn was detouring when the situation plainly demanded that he travel the straight road ahead.

After considering all the facts the Supreme Court of the United States has solemnly declared that respondent "is an unfit person to practice

at the bar of this Court." The District Court for the Middle District of North Carolina has said the same. The United States Circuit Court of Appeals for the Fourth Circuit has said the same. Manifestly, the action of the Federal courts in this matter does not control the Supreme Court of North Carolina. Nevertheless, the judgments of these courts establish beyond question, the fact of the present unfitness of the respondent.

2. When the Attorney-General lodged a motion in November, 1933, to revoke the license of the respondent, this Court appointed a committee of the bar of this State, learned in the law and having no interest in the result except to do even and exact justice. They heard the respondent and examined and considered with care all the evidence offered in his behalf. After patient and diligent consideration they unanimously recommended to this Court that the respondent be disbarred. It is manifest that the respondent has been fully heard, and his cause has been considered by a tribunal of fair and impartial men. Therefore, it is the opinion and judgment of this Court that the license heretofore issued by the Supreme Court of North Carolina to the respondent at the Fall Term, 1928, be, and the same is hereby revoked and respondent disbarred from the practice of law in the courts of North Carolina.

The rule heretofore issued will be made absolute and the petition of the Attorney-General granted.

Motion allowed.