DEVIN, J., took no part in the consideration or decision of this case.
Pursuant to said motion, notice was issued and served on the said Harry A. Gorson, as respondent in this proceeding, ordering him to show cause, if any he had, why the said license should not be revoked, and why he should not be disbarred for the reasons set out in said motion.
In response to said notice, the respondent Harry A. Gorson appeared in the Supreme Court and moved in writing that the proceeding be dismissed; and, upon denial of his said motion, the said respondent Harry A. Gorson filed an answer to the motion of the Attorney-General, by which he raised certain issues of fact, and set up certain matters in defense to said motion.
It was thereupon ordered by the Supreme Court that the proceeding be and the same was referred to a committee composed of three members of the bar of said Court, to wit: Hon. E. Frank Watson, of Burnsville, N.C.; Hon. W. R. Chambers, of Marion, N.C.; and Hon. S. J. Ervin, Jr., of Morganton, N.C. with the request that said committee, after notice to the Attorney-General and to the respondent Harry A. Gorson, hear evidence pertinent to the issue involved in the proceeding, and report its findings of fact to the Supreme Court, together with its recommendations as to the action of the Court in the premises.
Thereafter, on 12 April, 1935, the committee filed a report of its action in the Supreme Court. The report is substantially as follows:
"Pursuant to the order of the Supreme Court of North Carolina, signed by the Hon. Michael Schenck, Associate Justice, and dated 13 December, 1934, we, the undersigned members of the bar of the said Supreme Court, composing the committee to which this proceeding was referred by the said court, met in the city of Asheville, N.C. on 24 January, 1935, for the consideration of the matters referred to us in said order.
"At said meeting, we heard the testimony of divers and sundry witnesses, whose evidence is found in the record. At said meeting, the Hon. T. W. Bruton, Assistant Attorney-General, was present, representing the Attorney-General of North Carolina; the Hon. J. Will Pless, Sr., was present, representing the respondent Harry A. Gorson.
"The committee finds the following facts:
"1. The respondent Harry A. Gorson attended the law school at Temple University, in Philadelphia, in the State of Pennsylvania, for three years, and graduated therefrom in 1916, with the degree of LL.B.; he was thereafter duly licensed to practice law in the State of Pennsylvania, and began the practice of law in the city of Philadelphia, in 1918. *Page 322 
He thereafter practiced law in the courts of the State of Pennsylvania until he was disbarred in 1929, as hereinafter set forth.
"2. The respondent Harry A. Gorson was disbarred by a judgment and order of the Court of Common Pleas, Number Two, of Philadelphia County, in the State of Pennsylvania, on 29 January, 1929, and by an order of the Supreme Court of Pennsylvania on 2 May, 1929, as set forth on pages 12 and 13 of the motion herein filed by the Attorney-General of North Carolina. Said orders of disbarment were duly entered in a disbarment proceeding duly conducted against the respondent in the courts of the State of Pennsylvania, and were based on findings of fact as set forth on pages 5 to 12 of the motion in this proceeding. The respondent was given due notice of said proceeding and entered a general appearance therein, in person and by counsel.
"3. The respondent did not practice law or engage in any business whatever from the date of his disbarment in the State of Pennsylvania until his admission to the bar of the State of North Carolina, as hereinafter stated. The respondent continued to reside in the State of Pennsylvania until the early part of 1932, when he went to the State of Florida, where he remained for a few months. He moved from the State of Florida to the city of Asheville, in the State of North Carolina, in the early part of 1933.
"4. On 21 August, 1933, the respondent successfully passed the examination given by the Chief Justice and Associate Justices of the Supreme Court to applicants for license to practice law in the State of North Carolina, in accordance with the Rules of said Court, and was thereafter granted license by the Supreme Court of North Carolina to practice as an attorney and counselor at law in the courts of the State of North Carolina.
"5. Prior to passing said examination, and obtaining license to practice law in the State of North Carolina, the respondent filed in the Supreme Court of North Carolina a certificate of his good moral character, signed by Worth McKinney and O. K. Bennett, members of the bar of said court residing at Asheville, N.C. in which they certified that the said Harry A. Gorson was then well known to them, and that he was then of good moral character. At the time of the filing of said certificate the said Worth McKinney and the said O. K. Bennett had known the respondent for from five to eight months.
"The respondent also filed in the Supreme Court of North Carolina a certificate signed by Claud L. Love, director of the Asheville University Law School, of Asheville, N.C. in which the said Claud L. Love certified that Harry A. Gorson had studied law for two years in the Asheville University Law School. The said certificate was untrue, for that the respondent had in fact attended the Asheville University Law School for only about two months. *Page 323 
"Both the said certificates were filed by the respondent as a compliance with the Rules of the Supreme Court of North Carolina, in force during the year 1933.
"6. When the respondent applied to Claud L. Love, director of the Asheville University Law School, for the proficiency certificate required by the Rules of the Supreme Court of North Carolina, as a condition precedent to his examination as an applicant for license to practice law in the courts of the State of North Carolina, he informed the said director that he was a graduate of the Law School of Temple University, in the State of Pennsylvania, and had been licensed to practice law in said state, but was unable to obtain license to practice law in the State of North Carolina, under the Comity Act, for the reason that he had not practiced law in the State of Pennsylvania for five years. The respondent concealed from said director the fact that he had been disbarred by the courts of the State of Pennsylvania, as hereinbefore set out. By means of the said false statement to the effect that he had not practiced law in the State of Pennsylvania for five years, and by means of his concealment of the fact that he had been disbarred in said state, the respondent procured the certificate from the director of the Asheville University Law School, at Asheville, N.C. which he filed with the Supreme Court of North Carolina
"7. By filing in the Supreme Court of North Carolina the certificate signed by Claud L. Love, director of the Asheville University Law School, in which it was falsely stated that the respondent had studied law in said law school for two years, the respondent Harry A. Gorson practiced a fraud on the Supreme Court of North Carolina, and on the Chief Justice and Associate Justices of said Court, and thereby obtained the privilege of standing the examination conducted by the said Chief Justice and Associate Justices of applicants for license to practice law in the State of North Carolina, on 21 August, 1933.
"8. At the time of his examination by the Chief Justice and Associate Justices of the Supreme Court, the respondent did not disclose to the said Chief Justice and Associate Justices, or to the Supreme Court, either directly or indirectly, that he had been disbarred by the courts of the State of Pennsylvania. No questions were asked the respondent prior to or on his examination as to whether he had been previously licensed to practice law in or been disbarred by the courts of any state other than the State of North Carolina.
"9. Shortly after receiving his license to practice law in the courts of the State of North Carolina in 1933, the respondent began to practice as an attorney and counselor at law in the courts of this State, at Asheville, N.C., and has since continued to practice. While there was evidence from reputable members of the bar of Asheville tending to *Page 324 
show that his professional conduct in Asheville has been under suspicion, there was no competent evidence offered to the committee to justify a finding that the respondent has been guilty of unprofessional conduct during his practice at Asheville.
"The members of the committee are not agreed as to whether or not the respondent practiced a fraud on the Supreme Court of North Carolina or on the Chief Justice and Associate Justices of said Court, by failing to disclose to said Court or to the said Chief Justice and Associate Justices the fact that prior to his application for license to practice law in the State of North Carolina, he had been disbarred by the courts of the State of Pennsylvania, a majority of the committee, namely, two members thereof, being of the opinion that the respondent was under the duty to disclose such fact, and that its concealment amounted to fraud, and a minority, namely, one member thereof, being of the opinion that there was no duty upon the respondent to disclose said fact, and that therefore the failure to disclose the fact of his disbarment does not constitute fraud.
"On the facts found by the committee and set out in this report, the committee concludes that the respondent Harry A. Gorson is not a suitable person to practice law in the State of North Carolina, and therefore recommends that the license issued heretofore to him by the Supreme Court of North Carolina to practice as an attorney and counselor at law in the courts of this State, be revoked, that he be disbarred, and that his name be stricken from the roll of attorneys in the Supreme Court and other courts of this State.
"The committee makes the foregoing recommendations, unanimously, on the ground that the committee is of the unanimous opinion that the defendant Harry A. Gorson practiced a fraud on the Supreme Court of North Carolina, and on the Chief Justice and Associate Justices of said Court, which resulted in his securing his license to practice law in the State of North Carolina, when he filed with said Court, as a compliance with its rules, his proficiency certificate containing a false and fraudulent statement to the effect that he had studied law in the Asheville University Law School for two years.
"The majority of the committee is also of the opinion that the respondent Harry A. Gorson further practiced a fraud on the Supreme Court of North Carolina, which resulted in his procuring his license, when he failed to disclose to said Court, or to the Chief Justice and Associate Justices of said Court, prior to his examination, the fact that he had been disbarred by the courts of the State of Pennsylvania.
"A minority of the committee, namely, the third member thereof, is of the opinion that the only fraud practiced upon the Supreme Court of North Carolina by the respondent was the filing of the false proficiency *Page 325 
certificate as found by the committee, the said third member of the committee being of the opinion that there was no duty on the part of the respondent to disclose to the Supreme Court of North Carolina, or to the Chief Justice and Associate Justices of said Court, the fact of his previous disbarment by the courts of the State of Pennsylvania.
"This 12 April, 1935.
 E. F. WATSON, W. R. CHAMBERS, S. J. ERVIN, JR."
After the report of the committee had been filed in the Supreme Court, and while it was pending in said Court, the respondent requested the Court to allow him the privilege of presenting oral arguments in support of his contention that the Court should not approve the findings of fact contained in the report, or act in accordance with the recommendations of the committee, and that on all the facts shown by the record the Court should deny the motion of the Attorney-General that his license be revoked, and that he be disbarred, and should dismiss the proceeding.
This request was granted, and thereafter the proceeding was heard on oral arguments and printed briefs by counsel for the Attorney-General and for the respondent.
Two questions manifestly of grave importance to the people of this State as well as to the members of the bar of this State are presented by the record in this proceeding:
1. Has this Court the power to revoke a license to practice law in this State which this Court has issued under statutory authority and in accordance with its Rules, on the ground:
(a) That at the time he applied for the license the licensee fraudulently concealed from this Court the fact that he had been disbarred by the courts of another state in which he had been duly licensed to practice law, on the finding by the courts of said State that the applicant had been guilty of unprofessional conduct in his relations to his clients involving moral turpitude; or,
(b) That at the time he applied for the license the licensee falsely and fraudulently represented to this Court that he had studied law in a law school in this State for two years, and had thereby qualified himself to take the examination by the Chief Justice and Associate Justices of this Court, as prescribed by statutes and Rules of this Court in force at the time of his application for the license? *Page 326 
2. If this Court has the power to revoke the license on either ground, ought the power to be exercised by the Court on the facts found by the committee of the bar, and approved by the Court in the instant case?
We are of opinion, and so hold, that both questions must be answered in the affirmative. This Court has the inherent power to revoke a license to practice law in this State, where such license was issued by this Court, and its issuance was procured by the fraudulent concealment, or by the false and fraudulent representation by the applicant of a fact which was manifestly material to the issuance of the license. In proper cases, it is the duty of this Court, and this Court will always exercise this power and thereby assure the people of this State and the members of the bar, that licensees who have fraudulently obtained the privilege of practicing law in this State shall not enjoy such privilege when the fraud has been disclosed to this Court, as in the instant case.
It is therefore ordered that the license to practice law in this State which was issued by this Court to the respondent Harry A. Gorson on 21 August, 1933, be and the same is hereby revoked, that said license be surrendered by the said Harry A. Gorson, upon demand, to the clerk of this Court for cancellation, and that the name of the said Harry A. Gorson be stricken from the roll of licensed attorneys and counselors at law of this State.
The motion of the Attorney-General in this proceeding is
Allowed.
DEVIN, J., took no part in the consideration or decision of this case.