IN THE MATTER OF EDWARD GROSS,
AN ATTORNEY AT LAW.

Argued April 29, 1975—Decided June 20, 1975.

*Mr. Frederick C. Vonhof* argued the cause for the Essex County Ethics Committee.

*Mr. Martin L. Greenberg,* argued the cause for respondent.

PER CURIAM. The presentment filed with this Court by the Essex County Ethics Committee requires us to review respondent's conduct while acting as attorney for the debtor in proceedings for an arrangement under Chapter XI of the Bankruptcy Act. Near the completion of that proceeding certain disclosures made by Mr. Gross to the Court prompted the Bankruptcy Judge to appoint a Special Examiner to make inquiry into possible irregularities on the part of respondent's firm. Thereafter, in an opinion dated November 1, 1972, the Judge found that the firm had lacked good faith in failing to make timely disclosures which were required by the Bankruptcy Act as well as by the local rules of court. He therefore denied respondent's law firm a fee — which in all probability would have exceeded $50,000 — and required repayment of the $10,000 retainer which the firm had already received. The Judge's opinion was not officially reported but was published in 95 *N. J. L. J.* 1330 (1972). The judgment was affirmed by the United States District Court in an unreported opinion dated October 12, 1973.

Shortly thereafter a complaint was filed by the Essex County Ethics Committee on its own motion. While this complaint was pending, respondent's law firm sought further relief in the federal courts by way of motion for reargument, *Fed. R. Civ. P.* 60(b). The motion was denied in April, 1974. In the fall of that year the Ethics Committee held several days of hearings and thereafter issued the presentment which is now before us.

A brief statement of facts is essential to a clear understanding of the issues. After some preliminary discussion among the parties, respondent's firm was retained by Scuffy Pet Centers, Inc., to initiate and go forward with a Chapter XI proceeding in the Federal District Court. At all pertinent times thereafter Edward Gross was effectively in charge of the legal proceedings and undertook or directly supervised what was done.

A petition for an arrangement was filed November 4, 1970 and on June 20, 1971 an order was entered confirming a plan of arrangement. By the terms of the plan a large and controlling stock interest in Scuffy Pet Centers, Inc. was acquired by Educational Youth Development, Inc. (EYD). The latter, in turn, lent $350,000 to the debtor corporation. Of this amount the sum of $110,000 was segregated at the time of confirmation, this constituting the fund from which allowances to counsel, as well as other administration expenses, were eventually to be paid.

At this point respondent had a conversation with the president of EYD. He pointed out that it would be in the interest of EYD, which now owned most of the stock of the debtor corporation, to reduce or expunge the claims of creditors to the greatest extent possible and that the time to do this work had arrived. Although everyone, including respondent, now agrees that this work is part of the task that is shouldered by an attorney for a debtor corporation in a Chapter XI proceeding, for which he may anticipate compensation by allowance to be made by the Court, it is certain that in his conversation with the president of EYD, respondent did not make this clear. The Bankruptcy Judge found as a fact that respondent, during this conversation, *denied* that challenging creditors' claims was within his responsibility as attorney for the debtor. Before the Ethics Committee he insisted he had never made so unequivocal a statement. We find that at the very least, the president of EYD was misled and that respondent must reasonably have been aware of this fact. Shortly thereafter, on August 26, 1971, EYD did enter into an agreement providing that respondent's firm would undertake the task of reducing or expunging claims and would be compensated in accordance with a contingency formula set forth in the agreement. That such an arrangement for special compensation would have been made had EYD understood that this work was part of that for which respondent's firm was already responsible, seems at best very doubtful.

On December 30, 1971, Mr. Gross filed a petition for allowances, with accompanying affidavit, in which he set forth in considerable detail the services his firm had rendered. No mention was made of the agreement for additional compensation to be paid by EYD.[1] Yet almost the next day he submitted a bill to EYD in the amount of $19,848.61 for services rendered in reducing and expunging claims.[2] The president of EYD became at once concerned as to whether the total compensation that Gross's firm would receive might not prove to be excessive. He indicated he had in mind consulting independent counsel to advise him as to his company's rights. A few days later, on February 7, 1972, respondent filed with the court a second affidavit, now for the first time revealing the existence of the EYD agreement.

Respondent contends that the failure to disclose the existence of the EYD agreement did not violate the Bankruptcy Act in any way, since it was a "third party" arrangement which could not have diminished the assets of the debtor corporation.[3] At the hearing before the Ethics Committee respondent produced as an expert witness, Charles Seligson, Esq., a professor at New York University School of Law and a recognized authority on the law of bankruptcy and bankruptcy practice. Professor Seligson did in large part support respondent's position that the details of such agreements need not at that time have been disclosed; however, even he felt that it would be improper for an attorney to fail clearly to reveal to the court that he was *not* seeking compensation for work covered by such agreements.

---

[1] This failure of disclosure was found by the Bankruptcy Judge to have "seriously transgressed" the requirements of Section 62(d) of the Bankruptcy Act. This determination was affirmed by the District Court.

[2] The amount was later reduced, by agreement, to the sum of $10,458.43.

[3] Disclosure in a case such as this is now clearly required by Bankruptcy Rule 219, which took effect October 1, 1973.

██ Respondent urges that in this ethics proceeding he should be entitled to go behind the adverse judgments that have been rendered against him in the Federal Court, and have the benefit of a fresh review of the facts by the Ethics Committee and by us. We agree and have made such independent examination and evaluation. This was also done by the Ethics Committee, as is apparent from its carefully worded and well stated presentment. Even where an attorney has suffered a criminal conviction, while this Court has long followed the practice of accepting such judgment as a determination of guilt, it has always entertained a full factual review in order to decide whether the conviction merits discipline, and if so the extent thereof. *In re Isserman,* 9 *N. J.* 316, 321 (1952) ; *In re La Duca,* 62 *N. J.* 133, 136 (1973) ; *In re Mischlich,* 60 *N. J.* 590, 592–3 (1972). We also have constantly in mind our rule that an ethical violation must be established by clear and convincing proofs. *In re Pennica,* 36 *N. J.* 401, 419 (1962).

██ We find the conclusion inescapable that respondent's conduct was ethically improper. He secured for his firm an agreement for extra compensation from EYD by misleading its president into the belief that the firm was not already obliged to do the claims work. He withheld from the Bankruptcy Court all information with respect to the EYD agreement until the threat of revelation from another source induced his making the belated disclosure. It was of course in his selfish interest to mislead the Bankruptcy Court into believing that the services for which it was asked to allow compensation included the work done in reducing or expunging claims, as this would presumably induce the granting of a larger fee.[4] These actions are offensive to *DR* 1–102 (A)

---

[4]Respondent argues that his original petition for allowances made it clear that no compensation was being requested for work done, after entry of the order of confirmation, with respect to the reduction or expunging of claims. A simple statement that no allowance was being sought for this particular work could easily have been included in the petition and would have set the matter at rest. As

(4) which condemns "conduct involving dishonesty, fraud, deceit, or misrepresentation."[5]

The matter of deciding upon the appropriate punishment is difficult. Respondent's professional record is otherwise unblemished. A distinguished member of the bar and former member of our judiciary testified to his good character and to the high esteem in which he is held among his fellow practitioners. The Essex County Ethics Committee, noting that respondent's firm had already been deprived of a fee in excess of $60,000, recommended that we limit our discipline to a reprimand or censure. After considerable reflection we have determined to accept this recommendation. Respondent is hereby severely reprimanded.

*For reprimand*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.

---

it was, the petition was so ambiguously structured in this respect as to have resulted in apparently conflicting readings by the Bankruptcy Judge and the District Court Judge. The former, in his opinion, states,

There can be no question that in preparing the first petition for allowances Cohen Gross and Novak deliberately *omitted* the services rendered after confirmation in reducing claims . . . [Emphasis added]

The opinion of the District Court, on the other hand, refers to

. . . the *inclusion* in the Petition for Allowances of certain services related to the reduction of creditor claims. [Emphasis added]

From our own examination of the petition we think it could be read either way.

[5]Other aspects of respondent's conduct were criticized in the Federal Court opinions as well as before the Ethics Committee. These have all been carefully considered. Discussion with respect thereto has been omitted from our opinion since nowhere is there presented by clear and convincing proofs, evidence of misconduct sufficient to warrant a finding of an ethical transgression save as set forth above.