IN THE MATTER OF THE SUSPENSION OF THE RIGHT TO PRACTICE LAW OF WILLIAM CORNELIUS PALMER

No. 90

(Filed 16 March 1979)

1. **Attorneys at Law § 11— judicial disciplinary proceeding—appellate review sought by State—petition for certiorari**

    While the State may not appeal a judicial disciplinary proceeding against an attorney as a matter of right, the State may seek review of such a proceeding in the appellate division by petition for a writ of certiorari.

2. **Attorneys at Law § 10— judicial disbarment proceeding—standard of proof**

    The standard of proof to be used in judicial disbarment proceedings is proof by clear and convincing evidence.

3. **Attorneys at Law § 12— knowledge of client's fraud on court—failure to withdraw as counsel—censure by Supreme Court**

    An attorney is censured by the Supreme Court for his violation of DR 7-102(B)(1) of the Code of Professional Responsibility in failing to withdraw as counsel for a criminal defendant when he knew before trial of an agreement between defendant and a codefendant to perpetrate a fraud upon the court by having the codefendant give false testimony, and defendant refused to rectify the situation.

    Justice EXUM concurring in result.

ON certiorari to review decision of the Court of Appeals (*Hedrick, J., Parker* and *Mitchell, JJ.,* concurring), 37 N.C. App. 220, 245 S.E. 2d 791 (1978). Docketed and argued as case No. 115 at Fall Term 1978.

In re Palmer

At the October 1976 Session of Catawba Superior Court, presided over by Judge Thornburg, respondent appeared as counsel for Kenneth Darrell Edmisten (Edmisten) who, along with Roger Oliver (Oliver), was placed on trial for manslaughter and leaving the scene of an accident. The charges resulted from a collision between two motor vehicles, one of which was occupied by Edmisten and Oliver.

During the course of the trial Judge Thornburg was advised that although Edmisten was the operator of the vehicle occupied by him and Oliver, they had agreed that Oliver would testify that he was the driver, and that respondent was aware of this agreement.

At the conclusion of the trial Judge Thornburg conducted a hearing to determine if respondent had intentionally and willfully violated the North Carolina State Bar Code of Professional Responsibility. Following the hearing Judge Thornburg entered an order finding facts and concluding that respondent had violated said code and suspending respondent for an indefinite period of time from practicing law in North Carolina.

Respondent appealed to the Court of Appeals. In a decision reported in 32 N.C. App. 449, 232 S.E. 2d 497 (1977), that court concluded that respondent had not received due process, vacated Judge Thornburg's order and remanded the cause for hearing after notice to respondent.

Following remand and notice to respondent, Judge Snepp, on 29 May 1977, conducted a hearing after which he found the following facts:

1. The respondent Palmer, is a member of the North Carolina State Bar, duly licensed to practice law in the State of North Carolina.

2. On 11 June 1976, Kenneth Darrell Edmisten was driving a truck on a public highway in Catawba County. Roger Oliver was a passenger. The truck struck a motorcycle at an intersection, and the rider was killed.

3. Edmisten and Oliver left the scene of the accident. They then agreed that since Edmisten had previously been convicted of driving under the influence, and might go to

prison as a result of the collision, that Oliver, who had no record, would say that he had been driving. They then called the police.

4. Later that night, Oliver gave Captain O. M. McGuire of the Hickory Police Department a written statement to the effect that he had been the driver of the truck at the time of the collision.

5. Edmisten retained Palmer as his attorney, and in the course of the attorney-client relationship told Palmer that he was in fact driving the truck at the time of the collision, that Oliver had agreed to say that he was the driver, and that Oliver had given a statement to that effect to the police.

6. Palmer told Edmisten that Oliver might be wrongfully convicted, and advised Edmisten to tell the truth and permit him, Palmer, to negotiate a plea. Edmisten thereafter informed Palmer that he wanted to plead not guilty and be acquitted.

7. A preliminary hearing was held in the District Court on 6 July 1976, and probable cause was found as to charges of involuntary manslaughter and the felony of leaving the scene of an accident involving personal injury in Edmisten's cases. Edmisten and Oliver were thereafter indicted for those offenses.

8. Oliver was represented throughout by Lewis Waddell, a member of the Catawba County Bar.

9. At arraignment, both Edmisten and Oliver entered pleas of not guilty.

10. Trial was had before the Superior Court, Honorable Lacy Thornburg, Judge Presiding, at the 27 October 1976 Session for Catawba County. Upon motion of the State, the cases were consolidated for trial without objection by either defendant.

11. During the trial, only one of the State's witnesses, a Miss Lowdermilk, identified Oliver as the driver of the truck at the time of the collision, but later testified that she could not "swear with certainty" that Oliver was the driver, and

admitted that she had never been able to identify Oliver positively as the driver.

12. At some point during the trial, Palmer told Edmisten that it did not look good for Oliver, and that if the case was dismissed as to Edmisten, Edmisten could thereafter admit he was the driver without incriminating himself.

13. The State called as its witness Captain McGuire of the Hickory police, who was asked by the District Attorney if Oliver had made a statement to him. Both defendants objected, and a hearing was held outside of the presence of the jury. The Court recessed for the evening before making its findings.

14. During or immediately after the hearing, Oliver for the first time told his lawyer, Waddell, that he was not the driver, but had said he was because of his agreement with Edmisten, and that Palmer knew this. Waddell thereupon informed the Court.

15. The next morning, in the absence of the jury, Oliver changed his plea to guilty, pursuant to a plea agreement to testify truthfully against Edmisten.

16. The trial then continued as to Edmisten, and Oliver testified for the State. Edmisten did not take the witness stand or present any evidence.

17. The jury found Edmisten guilty as charged in each of the cases.

In a memorandum opinion Judge Snepp observed that the appellate courts of this state apparently have not decided the standard of proof that should be applied in judicial disbarment proceedings. He concluded that a standard of proof higher than that applied in ordinary civil cases should be required and adopted the "clear and convincing" rule. He further concluded that he was not satisfied by clear and convincing evidence that respondent willfully and intentionally violated any provision of Disciplinary Rule 7-102, and dismissed the proceeding.

The Court of Appeals granted the state's petition for a writ of certiorari to review Judge Snepp's order. Thereafter, the Court

of Appeals concluded that the state has no right of appeal in a disbarment proceeding, that to allow certiorari is to permit indirectly that which is not permissible directly, and that certiorari was improvidently granted. The Court of Appeals thereupon "dismissed" the proceeding.

The state's petition to this Court for a writ of certiorari to review the Court of Appeals decision and Judge Snepp's order was allowed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Joan H. Byers, for the state.*

*McElwee, Hall & McElwee, by William H. McElwee, III, and Robert A. Melott, for the appellee.*

*Harold D. Coley, Jr., Amicus Curiae, for The North Carolina State Bar.*

BRITT, Justice.

[1] The first question for our consideration is whether Judge Snepp's order is reviewable by the appellate division. We hold that it is.

In holding that this cause is not reviewable at the behest of the state, the Court of Appeals relied upon the decision of this Court in *In re Stiers*, 204 N.C. 48, 167 S.E. 382 (1933), a case involving suspension of an attorney's privilege to practice law. There, an attorney who had entered a plea of *nolo contendere* in the United States District Court to a felony charge was suspended from practicing law in that court during a period of probation. On the basis of that action, the state, through the district solicitor, instituted disbarment proceedings in the superior court. The proceeding was dismissed when the trial judge determined that a plea of *nolo contendere* was not equivalent to a confession of guilty of a felony. The state appealed. In holding that the proceeding was not appealable by the state, this Court held:

"It is an elementary proposition of law that the State cannot appeal either in civil or criminal actions unless such right is given by the lawmaking power of the State. It is apprehended that the reason for such a policy is built upon the idea that when the State in its sovereign capacity brings a

citizen into its own tribunals, before its own officers, and in obedience to its own processes, and loses, that its avenging hand should be stayed except in unusual cases where the power to appeal is expressly conferred. The right of appeal is given the State in C.S., 215, but C.S., 215 is a part of chapter 941 of the Public Laws of 1907, which committed disbarment proceedings, for causes therein specified, to the initiative of the grievance committee of the North Carolina State Bar Association. Chapter 64 of the Public Laws of 1929, in accordance with which the present proceeding was conducted, is a complete act in itself and confers no right or power of appeal upon the State. . . ." 204 N.C. 49-50.

Substantial change in the statutory law dealing with the discipline of attorneys dictates that the Court reach a result in the case *sub judice* which is different from that reached in *Stiers*.

C.S. 205 (chapter 64 of the 1929 Session Laws), the authority upon which the proceeding in *Stiers* was brought, was derived from the Revisal of 1905, Section 211, which was in turn based upon Chapter 216, Section 4, of the Session Laws of 1870-71. In *In the Matter of Ebbs*, 150 N.C. 44, 63 S.E. 190 (1908), the Court had held that the Act of 1871 was a "disabling" statute which restricted the inherent power of the courts to discipline attorneys for the commission of crimes that had "no direct connection with their practical and immediate relation to the courts." When the appealability question was decided in *Stiers*, the Supreme Court was not concerned with the inherent power of the appellate court to review disciplinary proceedings against an attorney in lower courts. The court, instead, was attempting to ensure that a limited type of statutory disciplinary proceeding was conducted in accord with established principles governing the right to appeal.

C.S. 204 through C.S. 215, the disciplinary provisions considered and relied upon by the Court in *Stiers*, were expressly repealed by Chapter 210, Section 20, of the Session Laws of 1933. Chapter 210 (now G.S. 84-15, et seq.) also created the North Carolina State Bar as an agency of the state and granted to that agency considerable power in the licensing and disciplining of attorneys. Chapter 210 itself was modified by Chapter 51, Section 4, of the Session Laws of 1937, now G.S. 84-36, which provides that "[n]othing in this Article shall be construed as disabling or abridg-

ing the inherent powers of the court to deal with its attorneys." This final change had but one purpose — to make clear to the bar and to the courts that the Legislature had removed the disabling effect of C.S. 205.

The effect of these several changes was considered by the court soon thereafter. In *State v. Spivey*, 213 N.C. 45, 47, 195 S.E. 1 (1938), we find:

> As was said in *In the Matter of Ebbs*, 150 N.C., 44, "We do not entertain any doubt that, in the absence of restrictive legislation, the courts have an inherent power to strike from their rolls names of attorneys who are found by reason of their conduct unfit and unworthy members. The decisions to this effect are numerous and uniform." As was also said in *Haywood, Ex parte*, 66 N.C., 1, "The Act of 1871 takes from the court the common-law power to purge the bar of unfit members, except in specified cases, and it fails to provide any other power to be used in its place." The Act of 1871, which became C.S., 204 and 205, was repealed *eo nomine* by section 20, chapter 210, Public Acts 1933, and thereby the restriction upon the inherent power of the courts to strike from the rolls the names of unworthy attorneys was removed.

> While the Act of 1933, being an act to organize The North Carolina State Bar, provides a method and procedure for disbarment of attorneys, such method is not exclusive, and does not fetter the courts in the exercise of their inherent power to disbar unworthy attorneys. To remove any doubt as to the method of disbarment of attorneys provided therein being a restriction upon the courts, the Act of 1933 was amended by section 4, chapter 51, Public Laws 1937, by adding thereto section 18a, which reads: "Nothing contained in this act shall be construed as disabling or bridging the inherent powers of the court to deal with its attorneys."

> As was said by the present *Chief Justice* in discussing a proceeding brought under the Act of 1933, "There are two methods by which an attorney may be disbarred: (1) The one judicial. *Attorney-General v. Gorson*, 209 N.C., 320, 183 S.E., 392; *Attorney-General v. Winburn*, 206 N.C., 923, 175 S.E., 498; *In re Stiers*, 204 N.C., 48, 167 S.E., 382. (2) The other legislative. *In re Parker*, 209 N.C., 693, 184 S.E., 532; *Commit-*

*In re Palmer*

*tee on Grievances v. Strickland,* 200 N.C., 630, 158 S.E., 110." *In re West,* 212 N.C., 189.

*Accord, In Re Burton,* 257 N.C. 534, 126 S.E. 2d 581 (1962); *In Re Northwestern Bonding Co.,* 16 N.C. App. 272, 192 S.E. 2d 33, *appeal dismissed,* 282 N.C. 426, 192 S.E. 2d 837 (1972).

It appears that appellate review of statutory disciplinary proceedings is now available.

G.S. 84-28.1 (Ch. 582 1975 S.L.) provides for a disciplinary hearing commission of the State Bar. This commission, or any committee thereof, "is authorized to hold hearings in discipline, incapacity and disability matters, to make findings of fact and conclusions of law after such hearings, and to enter orders necessary to carry out the duties delegated to it by the council" of the State Bar.

On 21 June 1977 this Court, pursuant to authority granted by § 13(2) of Article IV of the State Constitution, amended Rule 19 of the Rules of Appellate Procedure, 287 N.C. 671, 727, in the following manner:

Rule 19, "PARTIES TO APPEAL FROM AGENCIES," is hereby amended by adding a new paragraph to read as follows:

"(d) *From the Disciplinary Hearing Commission of The North Carolina State Bar.* The complainant in the original complaint before the Disciplinary Hearing Commission, each of the other parties to the proceeding, the Chairman of the Hearing Committee or the Chairman of the Commission may be parties of record to and participate in the appeal as appellants or appellees according to their respective interests." 292 N.C. 739, 739-40.

Thus, it appears that under our statutory method of disciplining attorneys "any party", including the attorney in question and the State Bar, may appeal from a decision of the disciplinary hearing commission.

The remaining question is whether the proceedings under the judicial method of disciplining attorneys are also properly the subject of appellate review when the decision therein is in favor of the attorney. We believe that they should be and that the court has ample authority for reviewing such proceedings.

Prior to the adoption of the Act of 1871 the court had exercised its inherent power to discipline attorneys. *In Ex Parte Biggs*, 64 N.C. 202 (1869), Biggs, an attorney who also published a newspaper, printed an article written by him which unfavorably commented upon an action taken by a superior court judge. The judge, exercising his inherent power, ordered Biggs disbarred. Biggs petitioned the Supreme Court for a writ of *mandamus* ordering the superior court judge to show cause why Biggs should not be reinstated as an attorney. *Mandamus* was refused. The court held that an attorney had no right to appeal from the judge's exercise of his inherent authority. It further held that Article IV, § 10, Const. 1868, accorded the court power to issue remedial writs "necessary to give it a general supervision and control of the inferior courts." The court then concluded that *certiorari* was the proper method for obtaining review of the judicial disbarment proceeding.

When attorneys are licensed to practice law in North Carolina, they are licensed to practice in all the state courts; therefore, the courts of the appellate division have an interest in the integrity and competency of those engaged in the practice of law in this state. Article IV, § 12, of our present constitution retains the provision granting the Supreme Court the power to issue remedial writs necessary to exercise supervision and control over the other courts. G.S. 7A-32(c) grants similar authority to the Court of Appeals necessary to supervise and control the proceedings of the courts of the trial division. Under these provisions the courts of the appellate division have power to review judicial disciplinary proceedings whether the attorney or the state has prevailed in the trial court.

Worthy of note is the apparent increase in the use of the judicial method of disciplining attorneys. Among the cases that have found their way to the appellate division recently are *In re Hunoval*, 294 N.C. 740 (1977); *In re Robinson*, 37 N.C. App. 671, 247 S.E. 2d 241 (1978); and *In re Dale*, 37 N.C. App. 680, 247 S.E. 2d 246 (1978).

[1]  We, therefore, hold that the state may seek review by the appellate division of proceedings disciplining attorneys under the judicial method. However, we further hold that the state may not appeal in such cases as a matter of right but must seek appellate review by petition for writ of certiorari. *Ex Parte Biggs, supra.*

[2] The second question for our consideration is whether Judge Snepp properly adopted the "clear and convincing" rule as the standard of proof that should be used in judicial disbarment proceedings. We hold that he did.

This likewise appears to be a question of first impression in this jurisdiction. It further appears that a far greater number of our sister states which have considered this question have followed the "clear and convincing" rule or its equivalent rather than a rule requiring a lesser standard of proof. States coming within the former category, and their decisions following the rule, include: Arizona, *Matter of Lurie*, 113 Ariz. 95, 546 P. 2d 1126 (1976) (Clear and convincing); California, *Davidson v. State Bar*, 131 Cal. Rptr. 379, 551 P. 2d 1211 (1976) (Convincing proof to reasonable certainty); Colorado, *People ex rel. Dunbar v. Weinstein*, 135 Colo. 541, 312 P. 2d 1018 (1957) (Substantial, clear, convincing and satisfactory); Florida, *Florida Bar v. Rayman*, 238 So. 2d 594 (Fla. 1970) (Mere preponderance is not sufficient); Georgia, *Cushway v. State Bar*, 120 Ga. App. 371, 170 S.E. 2d 732 (1969), *cert. denied*, 398 U.S. 910, 26 L.Ed. 2d 71, 90 S.Ct. 1705 (1970) (Beyond reasonable doubt); Idaho, *In re May*, 96 Idaho 858, 538 P. 2d 787 (1975) (Clear showing of bad intent); Illinois, *In re Bossov*, 60 Ill. 2d 439, 328 N.E. 2d 309, *cert. denied*, 423 U.S. 928, 46 L.Ed. 2d 256, 96 S.Ct. 275 (1975) (Clear and convincing); Iowa, *Iowa State Bar v. Kraschel*, 260 Ia. 187, 148 N.W. 2d 621 (1967) (Convincing preponderance—less than in criminal, more than in civil); Kansas, *State v. Turner*, 217 Kan. 574, 538 P. 2d 966 (1975) (Substantial, clear and convincing); Louisiana, *La. State Bar v. Edwins*, 329 So. 2d 437 (La. 1976) (Clear and convincing); Maryland, *Bar Assoc. of Baltimore v. Posner*, 275 Md. 250, 339 A. 2d 657, *cert. denied*, 423 U.S. 1016, 46 L.Ed. 2d 388, 96 S.Ct. 451 (1975) (Clear and convincing); Massachusetts, *In re Mayberry*, 295 Mass. 155, 3 N.E. 2d 248 (1936) (Fair preponderance, but not beyond reasonable doubt); Nebraska, *State ex rel. Neb. State Bar v. Cook*, 194 Neb. 364, 232 N.W. 2d 120 (1975) (Clear preponderance); New Jersey, *In re Gross*, 67 N.J. 419, 341 A. 2d 336 (1975) (Clear and convincing); Oregon, *In re Gygi*, 273 Or. 443, 541 P. 2d 1392 (1975) (Clear and convincing); Pennsylvania, *In re Shigon*, 462 Pa. 1, 329 A. 2d 235 (1974) (Clear and satisfactory); South Carolina, *In re Friday*, 263 S.C. 156, 208 S.E. 2d 535 (1974) (Clear and convincing); South Dakota, *In re Jaquith*, 79 S.D. 677, 117 N.W. 2d 97 (1962) (Clear,

undoubted preponderance); Utah, *In re McCullough*, 97 Utah 533, 95 P. 2d 13 (1939) (Convincing proof and a fair preponderance); Vermont, *In re Wright*, 131 Vt. 473, 310 A. 2d 1 (1973) (Clear and Free from doubt); Virginia, *Va. State Bar v. Gunter*, 212 Va. 278, 183 S.E. 2d 713 (1971) (Clear proof, but not beyond reasonable doubt); Washington, *In re Little*, 40 Wash. 2d 421, 244 P. 2d 255 (1952) (Clear preponderance); West Virignia, *W. Va. State Bar v. Daniel*, 235 S.E. 2d 369 (W. Va. 1977) (Full, preponderating and clear evidence); Wisconsin, *State v. Heilprin*, 59 Wis. 2d 312, 207 N.W. 2d 878 (1973) (Clear and satisfactory—the middle burden of proof).

The reason for the clear and convincing rule is well stated by the Supreme Court of New Jersey as follows:

> "The proceeding is not criminal in character; it is *sui generis*, stemming from the inherent power of the court to regulate the practice of law and the admission of persons to engage in that practice. But it is essentially civil in nature. Because of the dire consequences which may flow from an adverse finding however, we regard as necessary to sustain such a finding the production of a greater *quantum* of proof than is ordinarily required in a civil action, *i.e.*, a preponderance of the evidence, but less than that called for to sustain a criminal conviction, *i.e.*, proof of guilt beyond a reasonable doubt. Although the specific rule has not been articulated previously in this State, we declare it to be that discipline or disbarment is warranted only where the evidence of unethical conduct or unfitness to continue in practice against an attorney is clear and convincing. (Citations omitted.) IN RE PENNICA, 36 N.J. 401, 177 A. 2d 721, 730 (1962)."

We understand that the State Bar has adopted the "preponderance of the evidence" rule for proceedings under the statutory method. Be that as it may, we feel that the "clear and convincing" rule is more appropriate when the judicial method is followed.

[3] The third question is whether Judge Snepp erred in concluding as a matter of law that respondent did not violate any disciplinary rule set forth in the Code of Professional Responsibility. We hold that he did.

Judge Snepp found as facts that on the occasion in question Edmisten was the driver of the vehicle occupied by him and Oliver; that immediately thereafter they agreed that since Edmisten had previously been convicted of driving under the influence, that Oliver, who had no record, would say that he was the driver; that later that night Oliver gave a police officer a written statement to the effect that he was the driver of the vehicle; that Edmisten retained respondent as his attorney and during the course of the attorney-client relationship he told respondent that he was the driver of the truck at the time of the collision, but that Oliver had agreed to say that he was the driver and had given a statement to that effect to the police; that at some point during the trial Palmer told Edmisten that it did not look good for Oliver but that if the case was dismissed as to Edmisten, he could thereafter admit he was the driver without incriminating himself; that following a voir dire hearing during the trial, Oliver for the first time told his lawyer that he was not the driver but had said he was because of his agreement with Edmisten; and that Palmer knew of this agreement; and that Oliver's attorney thereupon informed the presiding judge. There was no exception to these findings of fact.

Judge Snepp then concluded as a matter of law that respondent had not violated DR 7-102 or DR 1-102 or any other Disciplinary Rule of the Code of Professional Responsibility, 283 N.C. 783 (1973). This conclusion of law is erroneous. Upon the facts found by Judge Snepp, we conclude that respondent has violated the Code of Professional Responsibility and that he should be censured.

The Code of Professional Responsibility provides, *inter alia*, that in the representation of a client, a lawyer shall not "[k]nowingly use perjured testimony or false evidence"; nor shall he "[c]ounsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." Code of Professional Responsibility, DR 7-102(A)(4) and (A)(7), 283 N.C. 783, 835. *See also* DR 7-102(A)(6), *id.*

DR 7-102(B)(1) provides as follows:

"(B) A lawyer who receives information clearly establishing that:

(1) His client has, in the course of the representation, perpetrated a fraud upon a person or tribu-

nal shall promptly call upon his client to rectify the same, and if the client refuses or is unable to do so, he shall discontinue his representation of the client in that matter; and if the representation involves litigation, the lawyer shall (if applicable rules require) request the tribunal to permit him to withdraw but without necessarily revealing his reason for wishing to withdraw." 283 N.C. 783, 836.

It is clear that before the trial respondent knew of the agreement between Edmisten and Oliver to perpetrate a fraud upon the court by having Oliver give false testimony. At that point it was respondent's duty to "call upon his client to rectify the same" and if his client refused, to discontinue his representation of Edmisten in the case. "It is axiomatic that the right of a client to effective counsel in any case (criminal or civil) does not include the right to compel counsel to knowingly assist or participate in the commission of perjury or the creation or presentation of false evidence." American Bar Association Committee on Ethics and Professional Responsibility, Informal Opinion No. 1314 (March 25, 1975). *See, United States ex rel. Wilcox v. Johnson,* 555 Fed. Rptr. 2d 115, 122 (3d Cir. 1977); *State v. Henderson,* 205 Kan. 231, 468 P. 2d 136, 64 A.L.R. 3d 375 (1970). Where an attorney learns, prior to trial, that his client intends to commit perjury or participate in the perpetration of a fraud upon the court, he must withdraw from representation of the client, seeking leave of the court, if necessary. *Wilcox, supra;* American Bar Association Committee on Ethics and Professional Responsibility, Informal Opinion 1318 (January 13, 1975) and Informal Opinion No. 1314 (March 25, 1975); ABA Standards Relating to the Prosecution Function and the Defense Function, Standard 7.5 at 268, Standard 7.7 at 275 (Approved Draft, 1971).

We note that this case does not raise the difficult issues which confront the attorney who does not discover the fraud until some later point in his representation of the client; for instance, after trial has begun or after trial has ended. *See* American Bar Association Committee on Ethics and Professional Responsibility, Formal Opinion No. 287 (June 27, 1953) and Formal Opinion No. 341 (September 30, 1975). We, therefore, need not attempt to reconcile the tension which exists between DR 4-101 and DR

7-102. Nor must we decide here what standard of conduct is appropriate when an attorney's request to withdraw is refused. *See, e.g., State v. Robinson,* 290 N.C. 56, 224 S.E. 2d 174 (1976); 55 N.C. L. Rev. 321; American Bar Association Standards 7.7 at 276. Here, respondent, who was aware of the fraudulent course of action which his client proposed to follow well before trial, made no attempt to withdraw.

We recognize that an attorney has a dual responsibility to his client. He is both advisor and advocate. Code of Professional Responsibility, E.C. 7-3. It is to respondent's credit that he told his client that Oliver might be wrongfully convicted, advised his client to tell the truth and urged his client to allow him to negotiate a plea. Indeed, this was his duty as an attorney. When it became apparent, however, that Edmisten had rejected this advice and could not be dissuaded from pursuing the fraudulent scheme which he and Oliver had devised, respondent had an equally clear duty to withdraw his representation.

We, therefore, exercise our inherent authority to discipline respondent. It is ordered by this Court in conference that William Cornelius Palmer be, and he hereby is, censured by this Court. This 16 March 1979.

The decision of the Court of Appeals is reversed and that part of Judge Snepp's judgment inconsistent with this opinion is vacated.

Justice EXUM concurring in result.

I disagree with the majority's conclusion that under the facts as found by Judge Snepp, respondent was ethically required to withdraw from representing Edmisten. So far as these findings go, Edmisten did not perpetrate a fraud on the Court or anyone else after respondent became his counsel. He did nothing but plead not guilty at his own insistence against the advice of respondent. His choosing to so plead, a choice which he alone could make, did not of itself require respondent to withdraw. There is no finding that either Edmisten or respondent intended to offer an untruthful witness or that Edmisten himself intended to testify falsely. Clearly nothing of this sort transpired. So far as we know respondent properly advised Edmisten that all he was

ethically permitted to do was to enter on Edmisten's behalf a plea of not guilty and put the State to its proof. On this basis respondent was ethically permitted to continue his representation.

Before the attorney-client relationship arose between Edmisten and respondent, however, Edmisten had engaged in fraudulent conduct. Edmisten advised respondent of this during the course of respondent's representation. During the trial respondent positively counseled Edmisten that if the case against him were dismissed he "could thereafter admit he was the driver without incriminating himself." This amounted to more assistance than respondent was required to give at that point to insure that Edmisten received a fair trial. This advice had the effect of assisting Edmisten in the fraud which he had committed prior to his having consulted respondent and which, respondent knew, might, through no fault of his own, intrude on the trial itself. In this, I think respondent ethically transgressed. I, therefore, concur in the result.