IN THE MATTER OF THE RIGHT TO PRACTICE LAW OF
WHEELER DALE, ESQ.

No. 7725SC664

(Filed 29 August 1978)

**Attorneys at Law § 11— disciplinary proceeding—notice of charges—appearance of bias by issuing judge—failure of judge to disqualify himself**

Where the notice of charges issued by a superior court judge in a disciplinary proceeding against an attorney stated that respondent, who had been appointed to represent on appeal a defendant convicted of first degree rape, "negligently failed to perfect the appeal or to seek appellate review by any other means" in violation of DR 1-102 and DR 6-101(3) of the Code of Professional Responsibility, it appears on the face of the notice of charges that the judge may have prejudged respondent's conduct without hearing any evidence; therefore, the judge should have disqualified himself and referred the inquiry to another judge, and his order suspending respondent from the practice of law must be vacated. However, the Court of Appeals, in the exercise of its inherent power to discipline attorneys, will rehear this matter and will determine what discipline, if any, should be imposed on respondent for his conduct as disclosed by the record.

Judge BRITT concurring in the result.

APPEAL by respondent from *Snepp, Judge.* Order entered 20 June 1977 in Superior Court, BURKE County. Heard in the Court of Appeals 23 May 1978.

This disciplinary action was instituted by Judge Snepp on 13 May 1977 by filing a "Notice of Hearing and Specification of Charges" against respondent, Wheeler Dale, a practicing attorney of Burke County, alleging that it had come to Judge Snepp's attention that probable cause exists for a hearing into Dale's fitness to practice law. The specification reads:

On 10 June 1977, respondent filed motions to prohibit the district attorney from participating in the hearing; to dismiss the charges based upon insufficiency of the notice of hearing; and to request Judge Snepp to disqualify himself from hearing the proceeding on its merits.

All motions were denied. Judge Snepp noted that he had issued the notice based upon the public record and that that was all he knew about the matter.

The facts presented were not in dispute and tended to show that: on 17 February 1976, respondent, an attorney licensed by the State of North Carolina, who practiced and had an office in Burke County, was appointed by District Court Judge Beach to represent one Kenneth Mathis, who was charged with the offense of first degree rape occurring on or about 14 February 1976; the defendant, Mathis, respondent's client, was tried before a jury and found guilty of the offense charged on 3 June 1976 and was sentenced to death by asphyxiation; respondent gave notice of appeal on behalf of Mathis, and the trial court allowed 60 days for defendant to prepare and serve case on appeal on the State; on 30 July 1976, respondent filed a motion for extension of time to serve case on appeal which motion was allowed by Judge Thornburg on 30 July 1976; on 11 August 1976, respondent filed on

behalf of his client a motion for Stay of Execution of Judgment; on 23 August 1976, respondent received the transcript of the testimony of the trial of defendant Mathis; respondent failed to prepare this case on appeal; and in May 1977, Judge Snepp removed respondent as attorney for defendant Mathis.

Ruth Ann Hembry testified for respondent that: during her services as assistant clerk or deputy clerk of the Superior Court (for almost seven years), she had an opportunity to observe respondent as a practicing attorney in Burke County, and his relationship with the Office of the Clerk of Superior Court; as far as she knew, his work was filed promptly and was done thoroughly with the exception of this case; and his general character and reputation in the community is good.

Robert B. Byrd, a licensed attorney practicing in Burke County, testified that: he had practiced law in Burke County since 27 September 1955, and had an opportunity to observe respondent in the practice of law since about the mid sixties; respondent was doing primarily real estate, housing development, subdivision, and legal work of that sort, and did not maintain a law office when he first started to practice law; the work that he observed over the years that he personally knew of was done in a competent manner and that he worked on some titles with him; he observed him in the District Court but not in the Superior Court; and his general character and reputation is good in the community.

Wayne W. Martin, a licensed attorney in Morganton, testified: he has practiced law in Burke County since August 1967; he is president of the Burke County Bar Association; in his observation of respondent, he found his work to be done competently; his character and general reputation is good; and the Bar Association does not have any plans to institute a system whereby the attorneys on the indigent list would be divided between those who could represent a man charged with a misdemeanor and those who were competent to represent persons charged with a capital offense.

Wheeler Dale, respondent, testified that: he was 62 years old, received his law degree from Wake Forest University in 1941, and began practicing law in 1963 or 1964; he had tried serious criminal cases in the Superior Court and had taken one appeal to the Court of Appeals in 1968; he had served one term as District

---

**In re Dale**

---

Court Judge from 1970 to 1974; after his term as Judge, he let it be known that he would take appointed cases (indigent cases); and he was appointed in the Kenneth Mathis case without consultation. Mr. Dale stated:

> "[I] have no excuse for not doing it. It is inexcusable on my part for not doing it. I didn't have a savings account or any funds in the bank that I could live on. It was just a matter of me having to live and placing my priority on living instead of doing what I should have been doing, I guess. I had no animosity or ill-feelings of any kind against my client. . . ."

Judge Snepp entered his order on 20 June 1977 which held in part:

> "It appears from the evidence, without contradiction, that Respondent, contrary to the Ethical Consideration of Canon 6, CODE OF PROFESSIONAL RESPONSIBILITY, undertook to represent a client in an area of law in which he was not qualified, and should have known he was not. He did not thereafter become qualified through study and investigation, or by seeking the assistance of lawyers accustomed to handling appeals. He, representing a client convicted of a capital offense, did nothing to protect his right to review of his trial by the Supreme Court of North Carolina.
>
> The Court therefore concludes, as a matter of law, that Respondent willfully violated, by the conduct found above, Disciplinary Rules 6-101(A)(1) (2) and (3)."

The respondent appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney Acie L. Ward, for the State appellee.*

*Simpson, Baker & Aycock, by Dan R. Simpson and Samuel E. Aycock, for respondent appellant.*

ERWIN, Judge.

The record shows this respondent did not take any action to perfect an appeal or seek judicial review for his client, who had been sentenced to death. Notice of appeal was given on 3 June

1976, and yet on 11 May 1977, the respondent had to be removed from the case because he had not perfected the appeal.

This Court held as follows in *In the Matter of the Right to Practice Law of: Harold Robinson, Esq.*, 37 N.C. App 671, 676, 247 S.E. 2d 241, 244 (1978):

> "There is no question that a Superior court, as part of its inherent power to manage its affairs, to see that justice is done, and to see that the administration of justice is accomplished as expeditiously as possible, had the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. Sanctions available include citations for contempt, censure, informing the North Carolina State Bar of the misconduct, imposition of costs, suspension for a limited time of the right to practice before the court, suspension for a limited time of the right to practice law in the State and disbarment. *See In re Burton*, 257 N.C. 534, 126 S.E. 2d 581 (1962); *In re Hunoval*, 294 N.C. ---, --- S.E. 2d --- (1977); *In re Bonding Co.*, 16 N.C. App. 272, 192 S.E. 2d 33, *cert. denied* 282 N.C. 426 (1972); *Colon v. U. S. Attorney for the District of Puerto Rico*, CA 1, 5/17/78, 46 U.S.L.W. 2653; Annot. 96 A.L.R. 2d 823.

\* \* \*

> [R]espondent argues, and we agree, that upon the face of the charges it appears that Judge Snepp prejudged respondent's conduct before hearing any evidence. We do not believe that Judge Snepp had in fact prejudged respondent's conduct. We think the wording of the specifications was an effort by Judge Snepp to fully advise respondent of the seriousness of the inquiry. Nevertheless it was an unfortunate and inappropriate choice of words and we cannot permit this record to stand. . . .

\* \* \*

> We think Judge Snepp's unfortunate and inappropriate choice of words came from the idea of necessity for specific allegations in a third party complaint, rather than from bias or prejudice. Nevertheless, we must render our opinion from the record before us.

Having drafted his notice in the form of specific allegations of misconduct it was incumbent upon Judge Snepp to disqualify himself, as he was requested by respondent, and to refer the inquiry to another judge. To perform its high function in the best way our courts must not only do justice but they should give the appearance of doing justice. In our opinion Judge Snepp was in error when he refused to disqualify himself and his order must be vacated."

The language used in the specification in the case before us is almost identical to that used in *In the Matter of the Right to Practice Law of: Harold Robinson, Esq., supra.* There Judge Snepp's order was vacated as it must be here.

To provide for uniformity in these very similar cases, we adopt and follow *In the Matter of the Right to Practice Law of: Harold Robinson, Esq., supra.*

However, the vacating of Judge Snepp's order does not require dismissal of this proceeding nor does it require a remand for a new hearing. A new hearing would serve no useful purpose. The facts are not materially in dispute and respondent has been accorded full opportunity to present his evidence. We are here concerned with the inherent power of the court to discipline errant attorneys. The facts are before us just as if we had instituted this inquiry and had referred it to the Superior Court for hearing. Therefore, we will exerecise our inherent power in this matter before us. The questions of mitigating circumstances and appropriate sanctions have been fully and zealously presented and argued in respondent's brief.

We therefore by this opinion notify respondent that we have before us the record as prepared and filed with us by respondent; that as soon as briefs have been filed, should respondent elect to do so, this matter will be further heard in this Court on the record and briefs; that this Court will consider what discipline, if any, should be imposed upon respondent for his conduct as disclosed by the record before us; that this cause is set for rehearing before this Court as follows: respondent has until and including 20 October 1978 to file his brief addressing the questions of whether this Court should exercise its inherent power to determine what discipline, if any, should be imposed upon respondent, and, if any, the extent thereof; and the State has un-

til and including 9 November 1978 to file its brief addressing the same questions.

The result is that the order appealed from is vacated and this cause is retained in this Court for further proceedings.

Order vacated.

Cause retained.

Judge ARNOLD concurs.

Judge BRITT concurs in the result.

Judge BRITT concurring.

I concur with the result reached in the opinion written by Judge Erwin. However, I question the part of the statement quoted from *In the Matter of the Right to Practice Law of: Harold Robinson, Esq.*, to the effect that "as part of its inherent power to manage its affairs" a court now has the authority in imposing sanctions to suspend for a limited time the right to practice law in the State and to disbar an attorney.