IN RE: CONTEMPT PROCEEDING OF TALBOT MICHAEL SMITH

No. 798SC719

(Filed 19 February 1980)

**1. Attorneys at Law § 2— foreign attorney—admission to practice for limited purpose—conditional motion**

G.S. 84-4.1 does not permit an out-of-state attorney to move for admission to practice in a court of this State for a limited purpose on a conditional basis, and the trial court could properly disregard a motion conditioned on the allowance of a continuance for eight weeks and rule on a prior motion which was not conditional, especially where the conditional motion was not signed by the out-of-state attorney.

**2. Attorneys at Law § 2— foreign attorney—motion for permission to appear in criminal trial—letter from judge to defendant as order allowing motion**

A letter from the trial judge to a criminal defendant stating that the judge was waiving the requirement of local counsel and allowing the motion of a foreign attorney to appear for defendant and represent him in the trial of his cases and ordering the attorney to appear for trial on a certain date constituted a sufficient "order" in response to the foreign attorney's motion for permission to appear for defendant where the judge sent a copy of the letter to the attorney and filed a copy for the record.

**3. Attorneys at Law § 2; Contempt of Court § 2.2— order for attorney to appear for trial—order not void—basis for contempt**

The trial court's order waiving the requirement of local counsel, allowing the motion of foreign counsel to appear for defendant in a criminal trial and ordering the foreign counsel to appear for trial on a certain date was not void and could be the basis of contempt proceedings against the attorney where it was a deferred ruling on foreign counsel's motion for admission to practice for a limited purpose.

**4. Attorneys at Law § 2; Contempt of Court § 2.2— court's waiver of local counsel—order to foreign attorney to appear for trial—basis for contempt**

Even if a trial judge has no discretion to waive the requirement of local counsel found in G.S. 84-4.1(5) before admitting a foreign attorney to practice on a limited basis in this State, the Court's order waiving local counsel, permitting foreign counsel to appear in a case, and ordering that the foreign attorney appear for trial on a certain date would be merely erroneous, not void *ab initio*, and could be the basis for contempt proceedings against the attorney because of his failure to appear as ordered.

**5. Contempt of Court § 2.2— failure of foreign attorney to appear for trial—contempt of court**

The willful and deliberate failure of a foreign attorney to appear for the trial of a criminal case as ordered by the court constituted criminal contempt under the provisions of G.S. 5A-11(a)(1), (3), (6) and (7).

6. **Contempt of Court § 2.2; Process § 9.1— contempt proceedings—personal jurisdiction over foreign attorney**

The superior court had personal jurisdiction over a foreign attorney in contempt proceedings against the attorney because of his failure to appear for trial to defend a criminal defendant as ordered by the court where the attorney was "engaged in substantial activity within this State," G.S. 1-75.4(1)(d), and consented to the jurisdiction of the court by presenting his motion to be admitted to the court *pro hac vice*, and where an order notifying the attorney of the contempt charges and allowing him 60 days to respond thereto was sent to the attorney by certified mail, return receipt requested, at the address he gave the court in his motion to be admitted to the court. G.S. 15A-15(a); G.S. 1A-1, Rule 4(j)(1)c.

7. **Contempt of Court § 2.2— contempt proceedings—failure of foreign attorney to appear for trial—plenary hearing**

A plenary hearing held by the trial court before holding respondent attorney in contempt for failure to appear for a criminal trial as ordered by the court complied with G.S. 5A-15 and the U.S. and N.C. Constitutions.

8. **Contempt of Court § 2.2; Judges § 5— contempt proceeding against attorney—failure of trial judge to recuse himself**

The trial judge was not required to recuse himself from presiding over proceedings to hold an attorney in contempt for his failure to appear for a criminal trial as ordered by the court because the judge mailed a proposed contempt order to respondent attorney prior to the hearing where the facts contained in the proposed order did not depend upon the credibility of any witnesses and were not contested or contradicted at the subsequent plenary hearing; the punishment proposed by the draft order did not indicate any bias or prejudgment on the part of the judge but gave notice to respondent of the seriousness of the charges and the possible consequences in the event the charges were proven beyond a reasonable doubt; and the actions taken by the attorney were not personal affronts to the judge and there were no marked personal feelings or personal stings on the judge's part to create an appearance of unfairness.

APPEAL by respondent from *Ferrell, Judge.* Judgment entered 20 March 1979 in Superior Court, WAYNE County. Heard in the Court of Appeals 10 January 1980.

This criminal contempt citation against Talbot Michael Smith, a licensed attorney in Michigan, evolved out of circumstances surrounding the criminal prosecution of Leslie "Ike" Atkinson and fifteen other defendants for controlled substance offenses under the laws of North Carolina. Judge Ferrell's proposed contempt order also found Richard Barry Mazer, a licensed attorney in California, in direct criminal contempt of court, but Mazer avoided final judgment of contempt by apologizing to the court and

making restitution for standby counsel fees. Although this contempt action is tangential to Atkinson's prosecution, certain facts concerning pretrial procedures in that case are necessary for an understanding of this case on appeal.

On 27 March 1978 a bill of indictment was returned against Atkinson. On 26 June 1978 Talbot Smith, along with an attorney from Georgia, appeared on Atkinson's behalf and participated in an informal conference in Judge Ferrell's chambers relative to pretrial discovery. Smith was not present when Atkinson was called for arraignment 11 September 1978, but at that time he addressed the court through an attorney for another defendant. The court was informed that Smith was contesting jurisdiction over Atkinson and that Smith requested an adjournment of the arraignment, in part to retain local counsel for Atkinson. The request for adjournment was allowed, and two days later Smith was present at Atkinson's arraignment. He announced that he was appearing on behalf of Atkinson and requested an adjournment of ten days, in order to retain local counsel and prepare certain motions. During this proceeding, when Smith objected to an order served on Atkinson for nontestimonial identification, Judge Ferrell responded: "Well, sir; I don't know how I can do for you in that regard until you have been admitted to practice before the Court." Also at this session Atkinson said that Talbot Smith would be his attorney in all further proceedings. Atkinson's arraignment was continued "upon motion of Talbot Smith."

On 2 October 1978 Stephen Smith, an attorney licensed in North Carolina and appearing in a limited representative position as local counsel, moved for a thirty-day continuance. Judge Ferrell announced to Stephen Smith that "Mr. Talbot Smith will not be permitted to appear if there isn't someone to appear with him from the Bar of North Carolina." Talbot Smith, who was present at this time, attempted to explain the problems he was having in obtaining local counsel. Judge Ferrell instructed Atkinson that unless he had retained local counsel by 4 October 1978, the court would appoint counsel or standby counsel for him. Judge Ferrell also announced that he would rule on a motion for Talbot Smith's appearance "whenever anyone files such a Motion."

At Atkinson's arraignment on 4 October, no attorney was present on his behalf. He informed the court that he was in the

process of retaining Stephen Smith from Raleigh to represent him, "along with my counsel, Talbot Smith from Michigan." He then signed a waiver of court-appointed counsel.

On 30 October 1978 Stephen Smith again appeared with a written notice of limited representation for pretrial motions. When he attempted to defer to Talbot Smith on a particular question, the court said Talbot Smith could not be heard until he had been approved to appear in North Carolina. Stephen Smith's verbal motion to admit Talbot Smith to practice in the courts of North Carolina for the sole purpose of representing Atkinson was then denied because it did not comply with the appropriate statute, N.C.G.S. 84-4.1. A written motion was submitted, but the court again found it was defective. The motion was tendered to the clerk, however, and permission to file a written amendment was given.

On 31 October 1978 a proper motion was submitted, and Judge Ferrell announced he would rule on the motion "in due course." He set the trial date as 3 January 1979. On 27 November Stephen Smith asked that the court "enter a record" concerning the motions; in addition to the motion of 31 October, a renewed motion had been submitted on 17 November. Judge Ferrell's response was that until a North Carolina attorney had been retained generally, not just on a limited basis, he could not entertain a motion to admit foreign attorneys, "although it's my intention likely to do so as I have indicated to you on a telephone conversation or conversations about this matter."

On 29 November Stephen Smith wrote to Judge Ferrell, informing him that his limited representation of Atkinson had been terminated "effective today." Judge Ferrell then wrote to Atkinson, announcing that he was waiving the local counsel requirement and allowing Talbot Smith's motion to appear for him. A copy of the letter was sent to Talbot Smith, notifying him that the case would be called for trial on 3 January 1979. Talbot Smith then informed the judge that unless the case was continued for at least eight weeks, he would be unable to represent Atkinson. He reiterated in a later letter: "[U]nless we have your assurance by December 29, 1978, that the trial of Mr. Atkinson's case will be continued as requested herein, you are respectfully advised that we shall not appear in Goldsboro on January 3, 1979."

When the case was called for trial on 3 January 1979, Talbot Smith was not present. Standby counsel was appointed for Atkinson. The case was concluded on 19 January, after which Judge Ferrell announced that he believed Talbot Smith to be in contempt for failure to appear on 3 January and therefore would conduct an inquiry into the matter at the end of March. He sent by certified mail, return receipt requested, a proposed contempt order to Talbot Smith, giving summary notice of measures to be imposed. The envelope was returned unopened and was entered into the record. On 20 March 1979 Judge Ferrell, after hearing evidence on behalf of the alleged contemnor, ordered and decreed that Talbot Smith was in direct, willful, and criminal contempt; he sentenced Smith to thirty days in jail and imposed a $500 fine. Smith was not present at the hearing.

Respondent appeals from this judgment.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*Loflin, Loflin, Galloway & Acker, by Thomas F. Loflin III and James R. Acker, for respondent appellant.*

MARTIN (Harry C.), Judge.

[1] This appeal presents several questions for our consideration. First, does N.C.G.S. 84-4.1 contemplate Talbot Smith's being able to make his motion for admission for a limited purpose as an out-of-state attorney conditional upon a specific occurrence? We answer this question in the negative.

On 31 October 1978 Stephen Smith, a North Carolina attorney appearing in a limited representative capacity for defendant Atkinson, submitted to Judge Ferrell a motion signed by Talbot Smith, a Michigan lawyer, for admission for a limited purpose as an out-of-state attorney pursuant to N.C.G.S. 84-4.1. Supporting statements required by the statute accompanied the motion. Judge Ferrell announced he would rule on the motion "in due course." On 17 November 1978, Stephen Smith filed a renewed motion on behalf of Talbot Smith, with a request for immediate hearing. This motion, not signed by Talbot Smith, contained the following language:

11. . . . Stephen T. Smith is further informed by Talbot Smith and Richard Mazer that their renewed motions for limited practice are conditioned upon the court continuing the trial of this case for a minimum of eight weeks so that said attorneys may have an opportunity to properly prepare for the trial of this case after their admission to this case.

12. Furthermore, Stephen T. Smith is informed by Talbot Smith and Richard Mazer that if the court will not continue the trial of this case for a minimum of eight weeks from the date it rules on the renewed motions for limited practice, that said renewed motions for limited practice shall be deemed to have been withdrawn by Talbot Smith and Richard Mazer.

. . . .

WHEREFORE, Defendant prays the Court that:

1. It reconsider its previously entered order denying the motions for limited practice by Talbot Smith and Richard Mazer and permit said attorneys to represent the defendant as trial counsel herein contingent upon the trial of this case being continued for a period of not less than eight weeks from the date the court grants the renewed motions for limited practice by out of state attorneys.

The inclusion of this condition was apparently prompted by testimony of counsel for codefendants in Atkinson's case, given at a hearing on 30 October 1978, to the effect that it would take eight weeks from the receipt of discovery materials to prepare for trial.

We do not think that N.C.G.S. 84-4.1 permits an out-of-state attorney to move for admission for a limited purpose in North Carolina on a conditional basis. Although the statute does not contain a specific prohibition against a conditional application, one of its requirements is that the movant "shall attach to his motion a statement that unless permitted to withdraw sooner by order of the court, he will continue to represent his client in such proceeding until the final determination thereof, . . .." N.C. Gen. Stat. 84-4.1(3). This requirement calls for a firm commitment from the movant which is contrary in spirit to a conditional application for admission for a limited purpose. We think the judge who con-

siders such a conditional motion can treat the condition as a nullity, especially when the facts are similar to those in this case. Talbot Smith had already submitted a motion for admission for a limited purpose on 31 October. Judge Ferrell had not yet ruled on that motion when Stephen Smith filed a renewed, conditional motion on 17 November 1978. This conditional motion was not signed by Talbot Smith. Judge Ferrell was correct in disregarding the conditional motion and continuing to consider the motion of 31 October.

[2] Our next inquiry is to determine whether Judge Ferrell's letter of 6 December 1978 was a sufficient "order" in response to Talbot Smith's motion of 31 October. For the following reasons we think that it was.

An order is a mandate, precept, command or direction authoritatively given by a court or judge. Black's Law Dictionary 1247 (4th ed. rev. 1968). As a general rule, some entry or record of an order is made. 56 Am. Jur. 2d Motions, Rules, and Orders § 38 (1971). These fundamental requirements were complied with here.

When Judge Ferrell wrote to Atkinson on 6 December 1978, he sent a copy of the letter to Talbot Smith and filed a copy for the record 8 December 1978. The letter contained the following response to Talbot Smith's motion for admission for a limited purpose:

> I am concerned that your Sixth Amendment Constitutional rights and Due Process guarantees are protected to the fullest extent. Since you told me in open court that you desire Mr. Talbot Smith and Mr. Richard Mazer to represent you, and due to the nature and seriousness of the charges against you, and since Mr. Talbot Smith obviously has expended considerable efforts over a long period of time in preparing your cases for trial, I am, in my discretion, now waiving the requirements of North Carolina counsel, and do now hereby allow the Motion of Mr. Talbot Smith and Mr. Richard Mazer to appear for you and represent you in the trial of your cases.

> As you are aware, the cases are scheduled for trial in Wayne County, North Carolina, beginning January 3, 1979. You are hereby advised, therefore, that the cases will stand

for trial at that time with counsel of your choice, Mr. Talbot Smith and Mr. Richard Mazer now being formally admitted to the North Carolina court for the general purpose of representing you at the trial of your cases, and any subsequent proceedings.

The following instruction to Talbot Smith was also included:

I am by copy of this letter addressed to your counsel at the addresses listed in their petitions advising them of the ruling of the court, and instructing them that the cases will be called for trial at the appointed session of court beginning January 3, 1979.

The court, in writing, ordered Talbot Smith to appear on 3 January 1979. Furthermore, in a letter to Talbot Smith dated 19 December 1978 and also filed in the case, the judge informed him that any motion to continue Atkinson's case would be determined in open court 3 January 1979. The letter concluded: "Should the cases not be continued, you and Mr. Smith, pursuant to your affidavit to remain in the case, will be expected to represent Mr. Atkinson on the trial of his cases commencing January 3, 1979."

[3] Having decided that Judge Ferrell's letter was a sufficient order, we must make a further inquiry into its nature. This is crucial, for Talbot Smith's duty to obey Judge Ferrell's order to appear for Atkinson's trial on 3 January 1979 depended upon whether it was lawful. Willful disobedience of an order which is void for lack of jurisdiction cannot be made the basis for contempt proceedings. *In re Burton*, 257 N.C. 534, 126 S.E. 2d 581 (1962); *Patterson v. Patterson*, 230 N.C. 481, 53 S.E. 2d 658 (1949). But disobedience of an order made by a court within its jurisdiction and power is a contempt, although the order may be clearly erroneous. *State v. Sawyer*, 223 N.C. 102, 25 S.E. 2d 443 (1943).

We hold that Judge Ferrell's order to Talbot Smith was not void. It was a response to Smith's original motion for admission for a limited purpose which the judge had deferred ruling on. Respondent takes no exception to the judge's conclusion:

(4) That the Court deferred ruling on the original application for limited practice for the sole reason that local counsel had not been retained for the entire trial as required by GS 84-4.1.

Clearly Judge Ferrell had jurisdiction and power to respond to that motion.

[4] Respondent argues that Judge Ferrell had no "lawful authority" to direct Talbot Smith to appear on 3 January 1979 to represent Atkinson while he did not have the benefit of assistance of North Carolina counsel. This argument raises directly the question whether a judge can, within his discretion, waive the requirement of local counsel found in subsection (5) of N.C.G.S. 84-4.1.

It is true that the statute contains the strict admonition that an out-of-state attorney may be admitted to practice on a limited basis in North Carolina "only upon compliance with the following conditions precedent." Five conditions are then listed, and one of these reads:

> (5) He shall attach to his motion a statement to the effect that he has associated and has personally appearing with him in such proceeding an attorney who is a resident of this State and is duly and legally admitted to practice in the General Court of Justice of North Carolina, upon whom service may be had in all matters connected with such legal proceedings, or any disciplinary matter, with the same effect as if personally made on such foreign attorney within this State.

Subsection (6) then grants the court discretionary power to allow or reject the application even after all the conditions have been complied with. The statute is silent as to whether the court may, within its discretion, waive any of the conditions.

In *State v. Scarboro*, 38 N.C. App. 105, 247 S.E. 2d 273, *disc. rev. denied*, 295 N.C. 652, 248 S.E. 2d 256 (1978), *cert. denied*, 440 U.S. 938 (1979), the trial court did not require written motions under N.C.G.S. 84-4.1 and, more pertinently, defense counsel from Alabama did not associate local counsel for the trial. Defendant argued on appeal that the court erred in allowing out-of-state counsel to appear without strictly complying with the statute. This Court held that there was no error, finding that defendant had desired Alabama counsel and did not object to their competency. The Court stated that the statute upon which defendant relied was not designed for his protection.

It is apparent that this statute was intended to subject foreign counsel to the jurisdiction of this State's courts on a continuing basis. G.S. 84-4.1(5) provides for mandatory association of local counsel so that at all times in a proceeding the court has power to compel, if necessary, foreign counsel to fulfill the duties placed upon them by G.S. 84-4.1 (1-4).

*Id.* at 107, 247 S.E. 2d at 274. Although *Scarboro* is not directly on point, it may be cited analogously as authority for allowing a trial judge to waive one or more of the conditions mandated by the statute.

Even assuming *arguendo* that the judge cannot waive the requirement for local counsel, we think the order would be merely erroneous, not void *ab initio*. If the trial court was empowered to issue an order, the parties are bound even though the order later may be found to have been based on a misinterpretation of the law. *Godsey v. Poe*, 36 N.C. App. 682, 245 S.E. 2d 522 (1978). Dissatisfaction with an order erroneously issued should be expressed through appeal or by motion to dissolve, not by open defiance. *Massengill v. Lee*, 228 N.C. 35, 44 S.E. 2d 356 (1947). The rule in North Carolina is that one cannot take it upon himself to reverse or ignore an erroneous judgment. *State v. Goff*, 264 N.C. 563, 142 S.E. 2d 142 (1965). We think that Talbot Smith had a duty to appear on 3 January 1979 as ordered. At that time, or before, he could have contested the order on the ground that Judge Ferrell lacked authority to waive the local counsel requirement, but he had no right to openly defy the order and not appear for the trial.

[5] The trial court correctly held respondent Smith in contempt of court. His conduct in failing to appear for trial on 3 January 1979 as ordered or instructed constituted criminal contempt under the following provisions of N.C.G.S. 5A-11(a):

(1) Willful behavior committed during the sitting of a court and directly tending to interrupt its proceedings.

(3) Willful disobedience of . . . a court's lawful . . . order . . . or instruction . . ..

(6) Willful . . . failure by an officer of the court to perform his duties in an official transaction.

(7) Willful . . . failure to comply with schedules . . . of the
      court resulting in substantial interference with the
      business of the court.

It is generally held that the willful absence of an attorney
from a scheduled trial constitutes contempt of court, although
disputes arise over whether it is direct or indirect contempt. *See*
Annot., 97 A.L.R. 2d 431 (1964); *State v. Verbal*, 41 N.C. App. 306,
254 S.E. 2d 794 (1979).

We are not required to determine whether attorney Smith's
failure to appear on 3 January 1979 as ordered constituted direct
or indirect contempt. Judge Ferrell gave Smith the benefits of a
plenary hearing before the adjudication of contempt. This was
more than Smith was entitled to as a matter of right if his acts
were direct contempt and all he was entitled to if they were in-
direct contempt. Under N.C.G.S. 5A-15(a) Judge Ferrell could
have provided Smith a plenary hearing if the acts were direct
contempt and was required to do so if the acts were indirect con-
tempt.

[6]  The court issued an order notifying Smith of the contempt
charges and allowing him sixty days to respond to the charges.
This order was mailed to Smith at the address he gave the court
in his motion to be admitted in the case *pro hac vice*. The service
of the order upon Smith was pursuant to N.C.G.S. 1A-1, Rule
4(j)(1)c, North Carolina Rules of Civil Procedure. This method of
service was proper to comply with the requirement of N.C.G.S.
5A-15(a) that "[a] copy of the order must be furnished to the per-
son charged." Where the court has personal jurisdiction as pro-
vided in N.C.G.S. 1-75.4, service under the above rule is
appropriate. One of the bases for obtaining personal jurisdiction
is where the party to be served is "engaged in substantial activi-
ty within this State." N.C. Gen. Stat. 1-75.4(1)d. Where an attor-
ney has been admitted to practice in North Carolina *pro hac vice*
to defend a person charged with criminal offenses, he is "engaged
in substantial activity within this State." Also, Smith submitted
himself to the jurisdiction of the court and consented thereto by
presenting his motion for admission to the court *pro hac vice*.
Jurisdiction over the person may be obtained by consent. *In re
Peoples*, 296 N.C. 109, 250 S.E. 2d 890 (1978), *cert. denied*, 442
U.S. 929 (1979). We hold the court had and has personal jurisdic-

tion over respondent Smith. While it is true that the letter to Smith was returned to the court, this did not vitiate the notice to respondent Smith. One cannot by his refusal to accept notice frustrate the courts in the due administration of justice. Smith obviously had actual notice of the charges and hearing date and place. Attorney Thomas Loflin appeared in court on 19 March 1979 and stated to the judge that he represented Smith in the hearing. It would have been unethical for Loflin to do so without Smith's prior authorization to Loflin to represent him. It follows that after Smith received knowledge of the charges and notice of hearing, he obtained Loflin to represent him.

[7] At the hearing Loflin made motions on behalf of Smith, produced testimony for him, argued his contentions to the court, and in general represented him during the plenary hearing. At the conclusion of the hearing, the court denied Smith's motions to dismiss and that Judge Ferrell recuse himself. Judge Ferrell found Smith guilty of contempt, made findings of fact and entered judgment as required by N.C.G.S. 5A-15(f). None of the facts found were in dispute. Respondent does not contend in his brief that the facts found are not established beyond a reasonable doubt. Judge Ferrell held, and we agree, that they were established beyond a reasonable doubt. *Jackson v. Virginia*, --- U.S. ---, 61 L.Ed. 2d 560 (1979). We hold the plenary hearing on 19 and 20 March 1979 complied with N.C.G.S. 5A-15 and the constitutions of North Carolina and the United States.

[8] We turn now to the question whether Judge Ferrell should have recused himself from presiding over the contempt proceedings of 19 and 20 March 1979.

"If the criminal contempt is based upon acts before a judge which so involve him that his objectivity may reasonably be questioned, the order must be returned before a different judge." N.C. Gen. Stat. 5A-15(a). Respondent argues that by Judge Ferrell's dictating and mailing the original draft of an order setting out the facts and conclusions with respect to Smith's alleged contempt, he expressed an opinion as to his guilt and could not have had an unbiased mind or given Smith a fair trial. Smith relies upon *Taylor v. Hayes*, 418 U.S. 488, 41 L.Ed. 2d 897 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 27 L.Ed. 2d 532 (1971); *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356 (1951); *In re Paul*, 28

N.C. App. 610, 222 S.E. 2d 479, *disc. rev. denied*, 289 N.C. 614, 223 S.E. 2d 767 (1976).

The facts set out in the draft order are all found in and supported by the record on appeal. The proposed legal conclusions contained in the draft order are all supported by those facts. The facts did not depend upon the credibility of any witnesses. None of them were contested or contradicted at the subsequent plenary hearing. All were established from the record beyond a reasonable doubt.

*In re Dale*, 37 N.C. App. 680, 247 S.E. 2d 246 (1978), and *In re Robinson*, 37 N.C. App. 671, 247 S.E. 2d 241 (1978), relied upon by respondent, are clearly distinguishable from this case. In *Dale* and *Robinson* the presiding judge was concerned with disciplinary proceedings against attorneys rather than contempt. The specification of charges signed by the judge was not based upon the personal knowledge of the judge, as here. The judge's information in *Robinson* was based partly upon the record but also upon hearsay statements. The judge did not personally know what the facts were surrounding the failure of the attorneys to perfect the appeals. The Court in *Dale* and *Robinson* properly held the judge who preferred the charges should have recused himself. The case *sub judice* is similar to *In re Paul, supra*, where this Court held it was appropriate for the trial judge to hear the contempt charges some time after the conclusion of the trial in which the charges arose, even though the trial judge had noticed the respondent of the charges during the trial. The Court so held even though the trial judge stated he "would have held him in contempt at that moment except we could not have tried the case." We find Judge Ferrell's conduct in the contempt proceeding did not fall within that proscribed by *Taylor, Mayberry,* or *Ponder, supra*.

The proposed punishment contained in the draft order did not indicate any bias or prejudgment on the part of Judge Ferrell; to the contrary it was notice to Smith of the seriousness of the charges and the possible consequences in the event that the charges were proven beyond a reasonable doubt at the plenary hearing. The draft order also provided Smith an opportunity to evaluate the charges and possible consequences to determine what action he should take. As noted above, attorney Mazer used

this opportunity to make an offer of purging his alleged contempt, which was accepted by the court. *Taylor v. Hayes, supra.* Attorney Smith chose not to so do. The plenary hearing shows clearly that Judge Ferrell conducted the proceedings in an unbiased, fair manner. He did not inject himself into the proceedings. The actions taken by Smith prior to 3 January 1979 were not personal affronts to Judge Ferrell. There were no marked personal feelings or personal stings on Judge Ferrell's part to create an appearance of unfairness. *Ungar v. Sarafite*, 376 U.S. 575, 11 L.Ed. 2d 921 (1964). The hearing was conducted in a calm, cool and detached judicial manner. Judge Ferrell's attitude throughout the proceedings is exemplified by his statement in response to a request from Smith's attorney: "I will be delighted to do that." Certainly, no abuse of discretion by Judge Ferrell is demonstrated in the record. Smith's refusal to appear in court on 3 January 1979 was manifestly willful and deliberate. His letter of 26 December 1978 establishes this beyond all reasonable doubt. Under these circumstances, we find no abuse of discretion in the punishment ordered by Judge Ferrell. The motion to recuse was properly denied.

We hold the findings of fact found by Judge Ferrell in the order of contempt are supported by the evidence beyond a reasonable doubt and are binding upon this Court. *Clark v. Clark*, 294 N.C. 554, 243 S.E. 2d 129 (1978). None of respondent Smith's rights, statutory or constitutional, were violated by the judgment.

Affirmed.

Judges VAUGHN and WEBB concur.