IN THE MATTER OF RAYMOND M. MARSHALL

No. COA07-629

(Filed 17 June 2008)

## Contempt— criminal contempt—failure to hold show cause order before different judge

The trial court erred by holding respondent attorney in criminal contempt when it did not have the show cause order returned before a different judge even though defendant failed to make such a motion, and the judgment is vacated, because: (1) N.C.G.S. § 5A-15(a) provides that the order must be returned before a different judge when circumstances cited in the statute caused the objectivity of the judge to be reasonably questioned; (2) the statute neither expressly nor impliedly places any responsibility on respondent to file a motion for recusal; (3) N.C.G.S. § 5A-15(a) imposes a duty on the judge to acknowledge that his involvement in the acts allegedly constituting the contempt could reasonably cause others to question the judge's objectivity, and, in such circumstance, to return the show cause order before a different judge *ex mero motu*; (4) distinguishable from *Key*, 182 N.C. App. 624 (2007), the acts constituting respondent's alleged criminal contempt in this case, as well as the circumstances surrounding those acts, took place before the same judge who issued the show cause order, conducted the contempt hearing, and ultimately found respondent in criminal contempt; (5) the record revealed the criminal contempt with which defendant was charged, regarding his failure to appear for calendar call and failure to return legal authority the judge had requested, was based upon acts so involving the judge that his objectivity may reasonably have been questioned; and (6) there was a reasonable possibility that, had the order been returned before a different judge, a different result would have been reached.

Judge STEELMAN dissenting.

Appeal by Respondent from order entered 19 October 2006 by Judge Michael E. Helms in Forsyth County Superior Court. Heard in the Court of Appeals 4 February 2008.

**IN RE MARSHALL**

[191 N.C. App. 53 (2008)]

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse Jr., for Respondent-Appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece, for the State.*

STEPHENS, Judge.

On 19 October 2006, Judge Helms convened a hearing at which Raymond M. Marshall ("Respondent") was to show cause why he should not be held in criminal contempt for his conduct during a criminal trial over which Judge Helms presided. At the contempt hearing, Judge Helms found that Respondent's saying "Lord" in a loud voice, in front of the jury, with his arms raised up, and in response to a ruling of the court was willfully contemptuous. Judge Helms sentenced Respondent to 30 days in jail, suspended the sentence, and placed Respondent on probation for one year. As conditions of probation, Respondent was ordered to (1) surrender his license to practice law for 30 days, which would be reduced to 15 days if he performed and paid the fee for 70 hours of community service; (2) obtain and pay for an evaluation for anger management; and (3) obtain and pay for treatment or counseling in connection with anger management, if recommended. Additionally, as a special condition of the suspended sentence, Respondent was required to serve 48 hours in the local jail. From this judgment, Respondent appeals.

## I. Background

### A. Calendar Call

Judge Helms presided over the 18 September 2006 session of misdemeanor appeals for Forsyth County. At calendar call, Respondent was not present with his client when his case was called. Alan Doorasamy, counsel for the co-defendant of Respondent's client, told Judge Helms that he thought Respondent was somewhere in the building, but that he was running a few minutes late. Mr. Doorasamy then indicated that the parties had agreed to continue the trial of his and Respondent's clients to February 2007. When Judge Helms said, "Anyway, it's nice to see you, sir[,]" Mr. Doorasamy believed the case had been continued and told this to Respondent when he saw Respondent in the hallway after calendar call.

Later that day, Judge Helms summoned Respondent to his courtroom to explain his absence from calendar call. The next day, Respondent appeared before Judge Helms and explained that he

understood the parties had agreed to continue the criminal case to February 2007, and that his presence at calendar call was therefore not still expected. Judge Helms then announced that he was setting the case peremptorily as the first case on the 2 October 2006 trial docket. Respondent objected, contending that the State and defendants could agree to a continuance. Judge Helms told Respondent to show him a case or statute to that effect. After some discussion, Judge Helms had the bailiff escort Respondent from the courtroom. When Respondent did not return later that day with a case or statute to support his earlier contention, Judge Helms issued a show cause order, requiring Respondent to appear before him on 20 September 2006 to show cause why Respondent should not be held in contempt for failing to appear for calendar call and for failing to return with the legal authority Judge Helms had requested.

At the 20 September show cause hearing, Judge Helms determined that the witnesses who had previously said Respondent was standing just outside the courtroom during calendar call were not certain enough to testify about the matter under oath, and that it was possible Respondent had not heard Judge Helms' order to return with the law in question. Therefore, Judge Helms found that Respondent should not be held in contempt of court.

## B. Motion to Recuse

Prior to jury selection in the underlying criminal case, Respondent made a motion for Judge Helms to recuse himself pursuant to N.C. Gen. Stat. § 15A-1223. Respondent alleged that Judge Helms had "displayed marked negative personal feelings toward [Respondent], and displayed an unfavorable personal disposition or mental attitude toward[] [Respondent,] thereby creating a likelihood of, or the appearance of, bias as would negatively affect [D]efendant[']s confidence of his due process rights to a fair and impartial trial." Respondent also requested that the motion to recuse be heard by another superior court judge. Without first hearing Respondent on his request that the recusal motion be heard by another judge, Judge Helms denied the request, positing, "Well, Mr. Marshall, you're fully aware of the volumes of case law that suggest that it's the judge from whom the attorneys are seeking the relief that the relief must be requested." During the contentious hearing on the motion to recuse, Respondent asked Judge Helms to "please allow [him] to finish" when he had been interrupted. Judge Helms responded, "As difficult as it is, Mr. Marshall, I will allow you to finish." Judge Helms expressed that

he did "not take lightly a motion for [him] to recuse [himself] from a case," and further stated to Respondent,

> So I don't know why—you're the one that's wrong in all this, but I'm the one that's being accused of being the bad guy. And, you know, that's difficult for me to swallow, Mr. Marshall, quite frankly. But go ahead. I've given you the floor and I'll do my best to maintain.

Judge Helms also stated, "I don't have long left on the bench. I've never been held at the will of the attorneys and I don't intend to go out with this feeling on my part that somebody got something over on me[.]" In ultimately denying Respondent's motion to recuse, Judge Helms explained:

> I will encourage you to go back—I've been a judge for 26 years . . . to find any occasion when I have, because of something a lawyer or a defendant has done or failed to do, done anything whatsoever wrong. I have a reversal rate of about [10]%. I'm right nine out of ten. If I jerked people around and treated people unfairly, the way you suggest that I would in this case, I would suggest to you that I would have a much higher reversal rate than I do. A record of which I am quite proud [].

## C. Criminal Trial

During a hearing on several motions made after jury selection, an issue arose about the defendants being black and the charging officers being white. Judge Helms warned Respondent, an African American, "I'm not going to let you play that card in the courtroom in front of a jury." When Respondent replied, "It's not a card to play[,]" Judge Helms responded, "Yes, it is. Yes, it is to base it on race as opposed to basing it on the facts that come from the witness stand, Mr. Marshall, is wrong. It's an advantage that you should not gain, whether it is true or not . . . ."

The act that formed the basis for the contempt judgment occurred during the cross-examination of the State's first witness, a police officer. Respondent questioned the officer about her call for "help" after the officer described calling for "assistance." Judge Helms intervened, saying, "You're getting into a semantic thorn bush here, you all. Assistance is help. Help is assistance. We're getting hung up on the use of words. Just tell us what you did ma'am." When Respondent attempted to address the court, Judge Helms cut him off and, after Respondent declined Judge Helms' offer to "look up those

**IN RE MARSHALL**

[191 N.C. App. 53 (2008)]

two words," Judge Helms stated, "Well then let's move along." Respondent then inquired into the length of time that had passed between the time the officer walked up to the individual she claimed was one of the defendants and the time when both defendants were taken away by the police. Judge Helms perceived Respondent's questions to be repetitive, urged Respondent to "[m]ove along[,]" and inquired, "Mr. Marshall, how many times are we going to go over this same stuff?" After Respondent framed the question several different ways, the witness answered, "I'm saying that I can't give you an exact time frame because I was not looking at my watch." Respondent then stated, "And then, therefore, you could—you would not argue that it was five minutes?" At that point, Judge Helms interrupted, stating, "She's not arguing, Mr. Marshall. As I recall—the jury will recall what she said. She said between—it could have been five; it could have been 20. Was that your answer, ma'am?" When the witness replied, "Yes, Your Honor[,]" Respondent exclaimed, "Lord."

After excusing the jury, Judge Helms said to Respondent:

Mr. Marshall, I'll hear from you why I should not ultimately hear from you on why you should not be held in contempt of court for saying "Lord" when the Court had made a ruling in this case that was adverse to what you wanted the Court to rule.

Now, sir, I am not going to sit through this entire trial fighting with you tooth and nail over every item of evidence that you care to dissect when its probative value is insignificant, if important at all. Whether it was "help" or "assistance"—we spent 10 minutes on whether it was "help" or "assistance."

Later in the trial, Judge Helms addressed his appearance of partiality:

It has looked like I've been picking on you the whole trial, and maybe that was one of your intentions. I don't know. It's certainly not my intention to do anything other than just have you stay within the bounds of professional propriety in the trial of this case.

. . . .

This is not Mike against—this is not Judge Helms against Mr. Marshall. Even though it may have appeared that way at some times by necessity, but I'm in search of the truth as well.

**IN RE MARSHALL**

[191 N.C. App. 53 (2008)]

After Respondent's client was found guilty of assault on a governmental official, and before sentencing in the matter, the following exchange took place between Judge Helms and Respondent:

[Judge Helms]: So I don't understand, Mr. Marshall, why you continue to want to act like, quite frankly, like you're out there in the parking lot at McDonald's on this evening just doing what you choose to do without regard to the apparent authority or actual authority of people in charge; in this courtroom, it's me. Now, you may not like me, you may not like the way I try a case, but that's neither here nor there as far as I'm concerned. You are expected, as an officer of this Court, to abide by the rules and to remain within the boundaries of professional propriety, which are well defined and which go on in courtrooms across the country every day.

Now, we'll get into this more when I entertain the contempt hearing, which I plan to do after lunch. Right now, Mr. Marshall, do you have anything at all to offer by way of what the Court should consider as it decides what [is] an appropriate sentence for your client who has been convicted by these 12 jurors?

[Respondent]: Yes, Your Honor, I object to your—all that you've said; and I will not trade insults with you and I will not—I don't need an audience to do it. I have no more to say, Your Honor.

### D. Contempt Hearing

At the beginning of the contempt hearing, Judge Helms explained to Respondent:

I have previously told you . . . that I only intended to focus on the one offending act, allegedly offending act, committed by you in my presence during a sitting of court while we were trying a case in front of the jury. However, I want to make sure that you understand that, while I am only concentrating on that one act, it is impossible to look at that one act in a vacuum or a void, which means that the entire conduct of the trial will be in the mind of the court when it determines this issue of whether or not you should be held in contempt for your conduct and what, if any, action is appropriate to remedy the situation.

After conducting the hearing, Judge Helms concluded that Respondent's conduct was willfully contemptuous and constituted direct criminal contempt of court. Judge Helms then sentenced

Respondent to 30 days in jail, suspended the sentence, and placed Respondent on probation for one year. In determining this sentence, Judge Helms initiated and considered *ex parte* communications with non-parties in order "to gain some insight" into Respondent. At the hearing, Judge Helms stated:

> And I have asked people, what is it—I have been trying to gain some insight into you, Mr. Marshall. I have learned about your football days back at West Virginia, your son's really outstanding football record at Duke, at least when he had a line good enough to protect him. You told me about your hard upbringing, I shared with you some of mine. But I'm still looking for what on earth would make an officer of the court conduct himself that way.
>
> . . . .
>
> The response I get is: "It's just Raymond, just Raymond." And I am thinking, "How sad."

## II. Discussion

Defendant argues that the trial court erred in not returning the show cause order for contempt before a different judge because Judge Helms' objectivity could reasonably have been questioned.

According to the plenary proceedings for criminal contempt, "[i]f the criminal contempt is based upon acts before a judge which so involve him that his objectivity may reasonably be questioned, the order *must* be returned before a different judge." N.C. Gen. Stat. § 5A-15(a) (2005) (emphasis added). Although, as a general rule, a defendant's failure to object to an alleged error by the trial court precludes raising the error on appeal, *see* N.C. R. App. P. 10(a); *State v. Reynolds*, 307 N.C. 184, 297 S.E.2d 532 (1982), "when a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). In this case, Respondent did not move to have the show cause order returned before a different judge. Thus, we must first determine whether the failure to make such motion precludes this Court from addressing Respondent's assignment of error.

When construing statutes, "[i]f the statute is clear and unambiguous, we will apply the plain meaning of the words, with no need to resort to judicial construction." *Wiggs v. Edgecombe Cty.*, 361 N.C.

IN RE MARSHALL

[191 N.C. App. 53 (2008)]

318, 322, 643 S.E.2d 904, 907 (2007). Here, the language of the contempt statute states unequivocally that "the order *must* be returned before a different judge" when the circumstances cited in the statute cause the objectivity of the judge to be reasonably questioned. N.C. Gen. Stat. § 5A-15(a) (emphasis added). The statute neither expressly nor impliedly places any responsibility on a respondent to file a motion for recusal. Had the legislature intended that a motion be required, the statute would have been drafted similarly to N.C. Gen. Stat. § 15A-1223, which states:

> A judge, *on motion of the State or the defendant*, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is:
>
> > (1) Prejudiced against the moving party or in favor of the adverse party; or
> >
> > . . . .
> >
> > (3) Closely related to the defendant by blood or marriage; or
> >
> > (4) For any other reason unable to perform the duties required of him in an impartial manner.

N.C. Gen. Stat. § 15A-1223(b) (2005) (emphasis added).

The State argues that N.C. Gen. Stat. § 15A-1223 provides the exclusive procedure by which a judge may be disqualified from hearing any criminal matter. We disagree. While the motion required by N.C. Gen. Stat. § 15A-1223 must be made in a criminal proceeding where either the state or the defendant alleges bias, close familial relationship, or absence of impartiality on the part of the presiding judge, the legislature specifically codified an exception to this requirement for criminal contempt proceedings where the acts constituting the contempt so involve the judge issuing the show cause order that his objectivity could be reasonably questioned. Given the judge's omnipotent role as opposing party, witness, finder of fact, and arbiter of law in a criminal contempt proceeding where the allegedly contemptuous acts so involve him or her, the legislature recognized the unduly inflammatory effect that a respondent's motion to return a show cause order before a different judge could have, and, thus, in this limited circumstance, did not impose such a prerequisite. Instead, N.C. Gen. Stat. § 5A-15(a) imposes a duty on the judge to acknowledge that his involvement in the acts allegedly constituting the contempt could reasonably cause others to question the judge's

objectivity and, in such circumstance, to return the show cause order before a different judge *ex mero motu*.

Although North Carolina appellate courts have addressed issues regarding recusal of a judge where bias or prejudice was alleged, this Court has never considered this issue in a criminal contempt pro-·ceeding where the judge's objectivity could reasonably have been questioned because of his involvement in the acts allegedly constituting the contempt. For example, in *In re Robinson*, 37 N.C. App. 671, 247 S.E.2d 241 (1978), and *In re Dale*, 37 N.C. App. 680, 247 S.E.2d 246 (1978), notice of charges against respondent-attorney issued by a superior court judge in a disciplinary proceeding stated that respondent " *'negligently . . . failed to perfect the appeal or to seek appellate review'* " by any other permissible means in four criminal cases, violating the Code of Professional Responsibility. *Robinson*, 37 N.C. App. at 678, 247 S.E.2d at 245; *Dale*, 37 N.C. App. at 681, 247 S.E.2d at 247. After denying respondent's motion to recuse, the judge found facts consistent with the charges specified and suspended respondent from the practice of law for one year. On appeal, this Court held the trial court erred in not granting respondent's motion to recuse as the language of the notice of charges constituted a prejudgment of respondent's conduct by the issuing judge, creating an appearance of bias and prejudice.

More recently, in *State v. Key*, 182 N.C. App. 624, 643 S.E.2d 444, *disc. review denied*, 361 N.C. 433, 649 S.E.2d 398 (2007), respondent-attorney abandoned his client outside the courtroom prior to his client's probation violation hearing. The superior court judge before whom respondent failed to appear issued an order directing respondent to appear before the Senior Resident Superior Court Judge to show cause why he should not be subject to disciplinary action and/or punished for contempt. The Senior Resident Superior Court Judge before whom the matter was set subsequently issued an amended show cause order, setting forth in detail the basis for the alleged criminal contempt. After a hearing, respondent was found guilty of criminal contempt and sentenced to 30 days in jail.

On appeal, respondent contended that the language of the amended order, similar to the language in *Robinson* and *Dale*, demonstrated that the Senior Resident Superior Court Judge was biased against respondent. *Id.* Although respondent had not made a motion for the judge's recusal, respondent alleged the judge should have recused himself from hearing the matter *ex mero motu*. Citing the fact that the respondent in *Robinson* and *Dale* had made a motion to

recuse the trial judge for alleged bias, and noting in a footnote that, pursuant to N.C. Gen. Stat. § 15A-1223, "in criminal cases, a motion to disqualify a judge must be in writing, accompanied by supporting affidavit(s) and filed at least five days before the call of the case for trial," *id.* at 632, 643 S.E.2d at 450-01 n.2, this Court dismissed respondent's argument for failure to preserve the assignment of error for appellate review.

Although, as in *Key*, Respondent in this case did not make a motion to have the show cause order issued by Judge Helms returned before another judge, the case at bar is distinguishable from *Key*. First, whereas *Key* points out that respondent in *Robinson* and *Dale* made a motion to recuse the judge for his alleged bias, *Robinson* and *Dale* involved disciplinary proceedings for violations of the Code of Professional Responsibility while this case involves a criminal contempt proceeding governed by N.C. Gen. Stat. § 5A-15. Furthermore, unlike in *Key* where the acts constituting respondent's alleged criminal contempt took place before a different judge than the judge respondent contended was biased, here, the acts constituting Respondent's alleged criminal contempt, as well as the circumstances surrounding those acts, took place before Judge Helms, the same judge who issued the show cause order, conducted the contempt hearing, and ultimately found Respondent in criminal contempt. As noted, in *Key* the superior court judge before whom respondent failed to appear for the probation violation hearing, and who issued the original show cause order based on respondent's conduct, returned the order before a different judge, thus complying with the statutory mandate of N.C. Gen. Stat. § 5A-15.

Accordingly, as *Key* is readily distinguishable from the case at bar, the holding in *Key* does not require dismissal of Respondent's assignment of error for failure to make a motion for recusal in this case. In light of this determination, we conclude that we may address Respondent's argument that the trial court erred in not returning the show cause order for contempt before a different judge.

The record reflects that conflict between Judge Helms and Respondent originated on 18 September 2006 with Respondent's failure to appear for calendar call. This resulted in Judge Helms summoning Respondent to court to explain his absence. Respondent appeared before the Judge the following day and, after an exchange between the parties, Judge Helms had a bailiff escort Respondent from the courtroom. The next day, Judge Helms issued a show cause order against Respondent for failing to appear at calendar call and for

failing to return to court the previous day with a copy of the statute or case law Respondent had referenced. A hearing on the show cause order was held by Judge Helms, and Respondent was found not to be in contempt.

Respondent then made a motion for Judge Helms to recuse himself from the underlying criminal trial and requested the motion be heard by another judge. Judge Helms immediately denied Respondent's request to have the motion heard before another judge and, after a contentious hearing, also denied Respondent's motion to recuse. Numerous heated exchanges took place between Judge Helms and Respondent during the subsequent criminal trial, both before and after the act that Judge Helms found constituted criminal contempt. When Judge Helms ultimately heard the contempt matter, he stated,

> While I am only concentrating on that one act, it is impossible to look at the one act in a vacuum or void, which means that the entire conduct of the trial will be in the mind of the court when it determines this issue of whether or not [Respondent] should be held in contempt.

The record before this Court abundantly reveals that the criminal contempt with which Respondent was charged was based upon acts so involving Judge Helms that his objectivity may reasonably have been questioned. Indeed, Judge Helms appeared to have recognized this fact when he stated, "This is not Mike against—this is not Judge Helms against Mr. Marshall. Even though it may have appeared that way at some times by necessity[.]" Since one purpose behind the statute is to maintain public confidence in the courts, even the appearance of a lack of objectivity must be avoided. *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 21 L. Ed. 2d 301 (1968) (stating that a judge must avoid even the appearance of bias), *reh'g denied*, 393 U.S. 1112, 21 L. Ed. 2d 812 (1969). Accordingly, the trial court erred in not returning the show cause order before a different judge. As the record reflects there was a reasonable possibility that, had the order been returned before a different judge, a different result would have been reached, *State v. Johnson*, 164 N.C. App. 1, 595 S.E.2d 176, *disc. review denied*, 359 N.C. 194, 607 S.E.2d 659 (2004), we vacate the trial court's judgment finding Respondent in criminal contempt.

In light of this holding, we need not address Respondent's remaining assignments of error.

For the above-stated reasons, the trial court's order is

VACATED.

Chief Judge MARTIN concurs.

Judge STEELMAN dissents in a separate opinion.

STEELMAN, Judge, dissenting.

This case is controlled by this Court's holding in *State v. Key*, 182 N.C. App. 624, 643 S.E.2d 44 (2007), *disc. review denied*, 361 N.C. 433, 649 S.E.2d 398 (2007), and must be dismissed. *Key* involved a criminal contempt proceeding where there was no motion to recuse the hearing judge, and the defendant then attempted to call into question the impartiality of the judge for the first time on appeal. This Court held "[t]his assignment of error has not been properly preserved and is dismissed." *Key* at 632-33, 643 S.E.2d at 451. The majority's lengthy attempt to distinguish *Key* cannot change its fundamental and controlling holding. I would dismiss Respondent's appeal.